[Sac. No. 2686. In Bank.—February 26, 1919.]

## MILLER & LUX INCORPORATED (a Corporation), et al., Respondents, v. JEFFERSON G. JAMES et al., Defendants; J. G. JAMES COMPANY et al., Appellants.

[1] JUDGMENT—OBJECT OF RULE OF RES ADJUDICATA—WITHDRAWAL OF ISSUE—AGREEMENT OF PARTIES—RULE NOT INVOCABLE.—The rule of *res adjudicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but where they expressly agree to withdraw an issue from the court, the reason for the rule ceases, and the issue is not in fact adjudged, and the parties themselves having consented to that method of trial, are not entitled to invoke the rule which requires parties to submit their whole case to the court.

[2] WATERS AND WATER RIGHTS—SEPARATE AND DISTINCT APPROPRIATIONS—SEPARATE LITIGATION—RIGHTS OF PARTIES.—In an action involving water rights, where the plaintiff claims under two separate and distinct rights by separate and distinct appropriations made in different years, the rights are so far distinct that they may be litigated separately.

[3] ID.—ACTION INVOLVING WATER RIGHTS—QUANTITY APPROPRIATED—STIPULATION AS TO AMOUNT — WITHDRAWAL OF ISSUE — DECISION NOT RES ADJUDICATA.—In an action involving water rights, a stipulation that no evidence should be offered for the purpose of proving an appropriation or diversion by plaintiffs greater or less than a stated number of cubic feet, and that the court need make no finding as to any appropriation other than as to said number of

feet, amounts to a withdrawal of the issue of other appropriations from the consideration of the court, and the decision is not *res adjudicata* as to the issue thus withdrawn.

[4] APPEAL—ORDER GRANTING REHEARING—LIMITATION OF ARGUMENT TO SINGLE QUESTION—EFFECT OF.—An order of the supreme court granting a rehearing vacates the previous judgment and sets the whole matter at large, notwithstanding the order limits the argument to one question.

[5] WATERS AND WATER RIGHTS—DETERMINATION OF OTHER RIGHTS IN SUBSEQUENT ACTION—STATUTE OF LIMITATIONS—EFFECT OF STIPULATION.—Where parties to litigation of this character allow the plaintiffs to continue in the occupation and enjoyment of the right to water claimed by them, and by a stipulation remove from the consideration of the court the relative rights of the parties to that water, and stipulate that the rights thereto may be determined in another action, subject to the claim that the first action is *res adjudicata* with relation thereto, the rights of the parties in and to the water must be determined in a subsequent case, as far as the statute of limitations is concerned, by the same rules that would have obtained had the first suit not been brought.

[6] ID.—APPROPRIATION OF WATERS FOR PUBLIC USE—COMPENSATION—LACHES OF RIPARIAN OWNER.—Where the five-year period of limitation has been allowed to elapse without any affirmative action by the riparian owner who claims that his water has been appropriated for public use, he is guilty of laches, and should not be permitted to assert his right to compensation after the lapse of that period, as against the public or the appropriator for a public use.

[7] ID.—RIPARIAN LAND—UNITING OF ADJOINING LAND IN OWNERSHIP—CHARACTER UNCHANGED.—Land adjoining riparian land does not by becoming united therewith in ownership become itself riparian, even though it may be accessible to, susceptible of irrigation thereby, and situate within the watershed of the stream.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

James M. O'Brien for Appellants.

Edward F. Treadwell and Short & Sutherland for Respondents.

WILBUR, J.—The defendants appeal upon the judgment-roll alone from a judgment whereby plaintiffs were adjudged

entitled to a continuous flow of water from the San Joaquin River of 1,360 feet per second, diverted through plaintiffs' main and outside canals, and superior to the riparian or other rights of the defendants. The same parties plaintiffs and defendants, or their predecessors, were plaintiffs and defendants, respectively, in prior litigation over their relative water rights in and to water flowing in the San Joaquin River, wherein it was adjudged that the respondents were entitled to a flow of 760 cubic feet per second. The principal point involved on this appeal is whether or not the previous decision precludes the adjudication of a greater right than 760 cubic feet a second in this litigation. The question turns, in part, upon a stipulation made by the parties in the previous case, which stipulation was incorporated into and made a part of the decision therein, and which decision and judgment are incorporated into and made a part of the decision in this case. To an understanding of the situation it is necessary to state some of the facts in relation to the litigation between the parties. In the previous litigation the plaintiffs were the appellants and in this litigation defendants are the appellants, and to avoid confusion on this appeal we will use the terms "plaintiffs" and "defendants" instead of "appellants" and "respondents."

In 1899 plaintiffs brought the action in Fresno County, final judgment in which is relied upon by the defendants as a conclusive adjudication of the rights of the parties in this action. This case is referred to throughout the briefs as the Fresno case and will be so referred to here. In the Fresno case plaintiff sought to enjoin the defendants from diverting water through a canal known as the Enterprise canal. In 1904 plaintiffs brought this action in Merced County to enjoin the defendants from pumping water from Fresno slough. In both actions plaintiffs alleged their right to divert more than 1,360 cubic feet a second from the flow of the San Joaquin River, and claimed that right by adverse possession and its devotion to a public use. In the Fresno case the plaintiffs alleged that they had diverted eight hundred cubic feet of water a second through its main canal, which was about 72 miles long, and a continuous use of that water from 1871. They also alleged an appropriation in 1896 of 350 cubic feet of water a second and the use thereof through a canal known as the "outside canal," which was over 30 miles

long. All active litigation between the parties was conducted
in the Fresno case until that case, after several appeals and
trials, resulted in a final judgment entered in June, 1915,
pursuant to the directions of this court, contained in *Miller
& Lux* v. *Enterprise Canal Co.*, 169 Cal. 415, [147 Pac. 567];
Id., 169 Cal. 447, [147 Pac. 579]. After that decision, this
case, the Merced County case, filed in 1904, was brought on for
trial. In both cases the defendants not only denied plain-
tiffs' title, but also set up their own rights as upper riparian
owners. It was contended by plaintiffs in these suits that the
lands of the defendants were not riparian to the San Joaquin
River, for the reason that they were situated along the Fresno
slough. But while these cases were pending, this court, in
*Turner* v. *James Canal Co.*, 155 Cal. 82, [132 Am. St. Rep. 59,
17 Ann. Cas. 823, 22 L. R. A. (N. S.) 401, 99 Pac. 520], de-
cided that the lands of the defendants along the Fresno slough
were riparian to the San Joaquin River. The history of the
Fresno case and the nature of the rights involved and the
result of the appeals therein are stated in the opinion finally
handed down. (*Miller & Lux* v. *Enterprise Canal Co.*, 169
Cal. 415, [147 Pac. 567].) The Fresno County case having
been once tried and a new trial granted, on November 3, 1909,
for the purposes of that trial the stipulation was entered into
between the parties with relation thereto, which now requires
our consideration. It will be observed that plaintiffs claim
two separate and distinct rights by separate and distinct ap-
propriations—one in 1871 and one in 1896; that whatever
rights could be gained by prescription had fully ripened with
relation to the appropriation of 1871 and as to that of 1896
had not ripened at the beginning of the Fresno suit (1899),
but had ripened at the time of the beginning of the Mer-
ced suit (1904). Notwithstanding the fact that plaintiffs
claimed water at two different points of diversion and under
separate appropriations, we may assume, without deciding,
that the judgment in the Fresno case, fixing the amount of
water to which the plaintiff was entitled, would be a final and
conclusive adjudication in all subsequent litigation between
the parties, including the Merced County case, as contended
by the defendants, in the absence of a stipulation, and that if
the plaintiff failed to offer proof concerning the alleged ap-
propriation of 1896 through the outside canal, and to estab-

lish its claim to the water so appropriated, the court must
have found that there was no such appropriation.

We will now consider the terms and effect of the stipula-
tion on the point in question, without quoting more of its
language than seems necessary for that purpose. It was ex-
pressly stipulated that no evidence should be offered for the
purpose of proving an appropriation or diversion by plain-
tiffs *greater or less* than 760 feet. From this stipulation it
followed if the plaintiffs were entitled to the use of any water
from the stream, the quantity was 760 feet, no more and no
less. To obviate that conclusion, however, it was further
stipulated *that the court need make no finding as to any ap-
propriation of water by said Canal Company other than as to
760 feet.* The stipulation, then, is further amplified with
relation to the effect of the decision in the case as follows:
"But this provision shall not be construed as aiding the
plaintiff in any future action or proceeding in establishing
rights in the water of the San Joaquin River greater than
760 feet." "The plaintiff, San Joaquin and Kings River
Canal Company, however, hereby preserving the right to
claim, prove, and establish in any proper action or proceed-
ing authorized by law, other than the above-entitled action,
the appropriation and diversion and right to an additional
quantity of water made by said plaintiff since the commence-
ment of this action or during said period of five years next
preceding the commencement of this action." It is further
provided: "But the findings as to the appropriation (1896)
alleged in the complaint from *said outside canal shall not be
deemed to be in favor of one party or the other, but shall be
deemed as withdrawn."* On applying the statement to the
facts as above indicated, the Canal Company thus reserved the
right to prove in the then pending Merced case, among other
things, the appropriation of 1896, as was subsequently done,
resulting in the judgment for an additional six hundred feet
of water, from which the defendant is appealing. In making
the above quotations from the stipulation we have omitted cer-
tain provisions, no doubt inserted at the instance of the de-
fendants and designed to preserve their right to assert that
the Fresno judgment was *res adjudicata* as to the quantity
of water to which plaintiffs were entitled. We will now
consider such stipulations.

After providing that no finding need be made as to any appropriation of water other than the 760 feet, and that this should not be construed to aid the plaintiff in any future action to establish rights in the waters of the San Joaquin River greater than 760 feet, the following clause was added, viz.: "Nor shall the defendants be deemed to have waived their right to plead in any such action or proceeding that the judgment made and entered in this action is a final adjudication of all the rights of said plaintiffs in and to the waters of said river." It will be observed that this added clause is not an agreement that the decision shall be a final adjudication of all the rights of the plaintiffs in and to the waters of the river. If it had that meaning it, of course, would foreclose the plaintiffs in this case. The agreement is that the defendants may *claim* in any other suit, and therefore in this suit, that the decision was a final adjudication of all the rights, just as they have done and are now doing. It was the same sort of reservation as the preliminary stipulation which authorized the defendant to attack the entire title of the plaintiff to the 760 feet of water, in which attack upon the first hearing before this court they were substantially successful. (47 Cal. Dec. 1.) After the above-quoted provision wherein the plaintiffs reserved the right in other litigation to establish the right to additional water, the following proviso was added, viz.: "Provided, however, that nothing herein shall be construed as a waiver by defendants of *their claim* that plaintiffs cannot hereafter in any other establish any appropriation other than the appropriation established in this action." Defendants are now, in the instant case, as it was stipulated they might, raising that exact question before this court. Nor is it contended that they have waived the right to make that *claim.* Of course, the stipulation does not mean that the claim referred to is valid. If so, there would be no room for argument and no necessity for so extended a stipulation. The provision in the stipulation that no findings need be made with reference to the outside canal "but shall be deemed as withdrawn" is also modified by the following clause, "subject to defendants' claim that plaintiff was and is obliged to include such water and its claim thereto in this action and unless so included, its rights thereto are waived." This means nothing more nor less that that, notwithstanding the defendants' consent that this issue be withdrawn, the

right is still reserved to plead *res adjudicata* in any subsequent action. Each of the parties having reserved certain rights more or less contradictory, the question may be perhaps best approached by considering what was actually accomplished by the stipulation. It was definitely and specifically agreed that there should be no finding of the court upon the issue as to the appropriation of 1896 for the outside canal. This, in effect, withdrew from the court all consideration of that appropriation, and the additional statement that it "should be deemed withdrawn" added no force to the stipulation. In the absence of this stipulation the failure of the court to find upon that material issue would have resulted in a mistrial of the action and required a new trial thereof. It was because of this stipulation, and only because of this stipulation, that a decision was proper wherein no findings were made with relation to this express allegation of the complaint. The case then resolves itself into the simple proposition of one whereby the parties by mutual consent have withdrawn from the consideration of the court an important portion of the matter before the court for litigation. The effect of this withdrawal was to narrow the issues in the case to those relating to the nature and character of the use of the 760 feet of water, and the rights of the parties with relation thereto, and the rights of the defendants growing out of the situation of their land, etc. That which the parties stipulated to thus accomplish was in fact accomplished by the decree. The court made no finding upon that issue, and in lieu thereof, and for the purpose of justifying such failure, incorporated in its finding as a part thereof the stipulation in question. **[1]** The rule of *res adjudicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but where they expressly agreed to withdraw an issue from the court, the reason for the rule ceases. The issue is not in fact adjudged, and the parties themselves having consented to that method of trial are not entitled to invoke the rule which requires parties to submit their whole case to the court. If they consent to adjudicate their differences piecemeal, there is no reason that the court should extend the rules of law to prevent that which they had expressly agreed might be done. **[2]** It is argued here that the rights of the plaintiff to the two different appropriations of water were as distinct as though they were two sep-

arate and distinct parcels of land, in which case, of course, it would be conceded that separate actions might be brought as to each. While the illustration may not be exactly apt, as we are dealing with a body of water flowing in a single stream, the rights are so far distinct that there is no good reason for holding that the parties could not, if they desired, litigate them separately. If it is true that where an issue is withdrawn by mutual consent from the consideration of a court in the trial of a case that the decision is not *res adjudicata* as to that issue between the parties because of that consent, then the provisions in the stipulation wherein the defendants reserved the right to *claim* that the decision is *res adjudicata* do not have the effect of re-establishing the case as one in which the plaintiff has either failed to allege, or, having alleged, has failed to prove some issue which under the principles of *res adjudicata* should have been submitted to the court for its decision in that case. If the consent gave a right to withdraw an issue, and if a withdrawal by consent *ipso facto* defeats a claim that the issue is *res adjudicata,* the reservation of a *right to claim* that the fact is otherwise amounts to nothing. But there are other baffling provisions in the stipulation bearing upon the question, for it is finally provided therein as follows, viz.: "It being the true intent and meaning of this stipulation that the rights of said plaintiff in any action or proceeding shall be no greater and no less than if this stipulation had not been made, and shall exist as though the judgment in this action was entered upon evidence taken at the trial and not upon the stipulation." If the first clause of this sentence is given full force and effect, without a consideration of other provisions, we ought not to consider the stipulation at all in determining the rights of the parties in this action, for it is provided that the rights in this action shall be "no greater and no less than if the stipulation had not been made," and, of course, if they are neither greater nor less because of the stipulation, it is a false quantity in determining the relative water rights of the parties. The next clause provides that the rights of the plaintiff "shall exist as though the judgment in this action was entered upon evidence taken at the trial and not upon the stipulation." It was difficult, if not impossible, to formulate a judgment in the Fresno case which could in fairness to the parties give effect to this stipulation. If the trial court found the fact to

be that the plaintiff was entitled to 760 cubic feet of water a second, this would necessarily be a finding, as defendant now claims it to be, that the plaintiff was entitled to no more than 760 feet of water. It would not leave the question open, but would close by an implied finding the very issue which counsel had agreed should not be determined by the court. It was, therefore, only by incorporating the stipulation into the findings that the trial court was able to make it clear that the issues with relation to waters of the outside canal, and waters appropriated within five years of the commencement of the action, were not determined. And so, of necessity, the decision shows on its face that the issue was not determined, and the reason why it was not determined, and the stipulation being a part of the decision, it is impossible to construe the effect of the decision without considering the effect of the stipulation. We cannot, therefore, construe the judgment and the findings as though the judgment had been entered "upon evidence taken at the trial and not upon stipulation." [3] Taken as a whole, therefore, the stipulation was in fact a withdrawal of an issue from the consideration of the court. The reservations and provisos in favor of the parties neither add to nor detract from this fundamental fact, and the issue having thus been withdrawn by consent, the decision of the court cannot be held to be an adjudication upon the very issue so withdrawn. In view of this conclusion it will be unnecessary to consider the various lines of argument by which it is sought to show that the rights of the plaintiff either have or have not accrued since the beginning of the Fresno suit, and the interpretation of those cases in which it has been held, *pro* and *con,* that rights accruing subsequent to the filing of a complaint, or to a defendant after the filing of the answer, need not be set up in a pending suit, for in any case the decision does not prevent the litigation in the instant case of the issues withdrawn from the first case.

A few important questions are presented by defendants which have not yet been considered, involving the nature and character of plaintiffs' right to the use of water, and various corollary propositions depending thereon. These will now be considered. The defendants claim that the decision in *Miller & Lux* v. *Enterprise Canal Co.,* 169 Cal. 415, [147 Pac. 567], adjudging the plaintiffs entitled to 760 cubic feet of

water a second, was based upon the fact that the water had been appropriated by plaintiffs and dedicated to a public use. The plaintiffs contend, however, that their title was held to be prescriptive. Upon the theory of a right by reason of a public use, defendants claim that the circumstances concerning the appropriation and use of the six hundred cubic feet of water in the instant case are precisely the same as in the case of the 760 feet. That being so, it is claimed that the right of the plaintiffs to the six hundred cubic feet of water appropriated in 1896 must have accrued, if at all, before the filing of the Fresno suit, and the argument that the Fresno decision is *res adjudicata* on the question of title, is based in part upon this proposition. Defendants also claim that if the right herein adjudged to the plaintiffs to the six hundred cubic feet of water arises from a public use and a dedication of such water to such public use by the plaintiffs, the plaintiffs ought not to secure from a court of equity an injunction against them without first paying adequate compensation for the property so taken for a public use, upon the principle that he who seeks equity must do equity. To these contentions the plaintiffs reply that the adjudication in the Fresno case was not based upon a dedication to public use, but upon prescription; that the right to six hundred cubic feet of water involved in the instant case is also prescriptive, and consequently did not accrue until 1901, and that, therefore, the right to the six hundred feet was acquired after the commencement of the Fresno case. To this defendants reply that the Fresno suit was brought only three years after the appropriation and constituted an interruption of the adverse use; that there was, therefore, no period of five years of uninterrupted use before the Merced case was begun, and that, on plaintiffs' own theory of a prescriptive title, they cannot recover. We will first consider the question as to whether the Fresno case is *res adjudicata* upon the question of title by dedication to a public use as distinguished from a prescriptive title. In determining that question we must look to the findings and judgment of the trial court as finally entered. The reasoning by which this court supported the decision of the trial court and directed a modification of the judgment is only material under the doctrine of *stare decisis,* and is of no more binding effect than any other decision of the supreme court. (*San Pedro, Los Angeles & Salt Lake*

*R. R. Co.* v. *Los Angeles* (Cal.), 179 Pac. 390; *San Pedro, Los Angeles & Salt Lake R. R. Co.* v. *Los Angeles, ante,* p. 18, [179 Pac. 393].)   The first decision rendered upon the appeal (47 Cal. Dec. 1) was vacated by the order granting a rehearing, and is not reported in the California Reports.  [4] While it is true that the order granting such rehearing limited the argument to the question of the effect of the public user, the order, nevertheless, vacated the previous opinion and judgment and set the whole matter at large.   The limitation of the argument to one point meant no more than the court was satisfied that the argument and the briefs upon the other points fully covered them.   In the opinion of the court upon rehearing, the first opinion, so far as it was adhered to by the court, was incorporated therein.   The opinion is mainly directed to a consideration of those cases in which the establishment of a public use was, under the circumstances, adjudged to be so far a dedication of a private right to a public use that the court would not interfere with that public use, and left the persons whose property was thus taken for public use to seek relief by way of compensation in a proper action. It was found from an examination of these cases that in every instance there had been some form of invasion of the property holder's right.   In applying the cases the court, therefore, turned to a consideration of whether or not there had been such an invasion of the rights of the defendants as would come within the rule of those cases, and upon such examination considered that, under the facts as shown, the defendants' rights had been invaded in two ways: First, by damming the water so that the same backed up into Fresno slough along the lands of the defendants, and, second, by taking out so large a volume of water so near the lands of the defendants that the flow of water to the riparian lands of the defendants was directly affected, and held that from the moment of the first appropriation and diversion there had been such an interference with the rights of the defendants that they could have brought an action to prevent such interference.   Two results followed from this fact.   First, that the case came clearly within those decisions declaring that courts would not interfere by injunctive process with the use of property by the public that had been allowed to accrue by the owner whose rights are alleged to have been invaded, and, second, that the use had at all times been adverse to

defendants. The court held that the finding of the trial
court that there was no interference with the defendants'
riparian rights was, under all the facts, not a correct find-
ing, but that other findings also made by the court so far
negatived that fact that a new trial was not necessary. The
order of the court directing a modification of the judgment
was, therefore, predicated upon two lines of reasoning, either
of which was sufficient to support the conclusion. In the in-
stant case, however, if the Fresno case was an interruption
of the quiet and peaceable possession essential to the ripen-
ing of a prescriptive right to the six hundred feet of water,
the decision of the trial court that these plaintiffs held by pre-
scriptive title could not be maintained, and we would then
be compelled to inquire whether or not the facts found by
the court as to the public use was alone a sufficient basis for
the judgment in favor of plaintiffs. We are, however, at this
point again met by the fact that the question as to the rights
of the parties to the six hundred cubic feet of water was by
stipulation eliminated from the Fresno suit; that it was, in
effect, agreed, that the rights of the parties in and to that
water could be adjudicated in the Merced suit. While the de-
fendants were very careful to preserve their rights to plead
*res adjudicata* in the Merced case, although ineffectively, as
we have held, no provision whatever is made by which the
plea of the statute of limitations would be preserved in the
Merced case to the same effect as it would have applied in
the Fresno case. Under such circumstances we do not see
how it can be successfully claimed that the Fresno case was
such an interference with plaintiffs' rights, by reason of the
affirmative answer of defendants therein, as would prevent
the statute of limitations from running. If, as is claimed by
defendants, the right to six hundred cubic feet of water was
involved in the Fresno case, the defendants were in a position
to insist that the rights thereto be tried in that case and thus
preserve to themselves the benefit of the fact that the five-
year period had not elapsed at the time of the beginning of
the suit with relation to the appropriation of 1896. **[5]** It
must be held, where parties to litigation of this character allow
the plaintiffs to continue in the occupation and enjoyment
of the right to water claimed by them, and by a stipulation
remove from the consideration of the court the relative
rights of the parties to that water, and stipulate that the

rights thereto may be determined in another action, subject to the claim that the first action is *res adjudicata* with relation thereto, that the rights of the parties in and to the water must be determined, in a subsequent case, so far as the statute of limitations is concerned, by the same rules that would have obtained had the first suit not been brought. The parties, in effect, treated the right to the 760 cubic feet of water and the six hundred cubic feet of water as two distinct rights, as they were in fact. Under the circumstances, the first case cannot be considered such an interruption of the rights of the parties as to prevent the running of the statute of limitations, and, therefore, the finding of the court that the five-year prescriptive period had run was correct. A consideration of the numerous decisions cited by both parties with relation to the effect of a pending action on the rights of the parties, in the subsequent action, to rely upon the statute of limitations, is therefore unnecessary. That being true, we are in the same position with reference to public use and adverse use in the decision of this case as in the decision of the Fresno case, and upon the authority of that case the judgment in favor of the plaintiffs fixing their right to six hundred cubic feet of water must be affirmed.

The next point is as to the right of defendants to compensation for property taken for a public use. Defendants in 1915 filed a cross-complaint, claiming compensation amounting to $1,825,000 for the 760 cubic feet of water, and $912,000 for the six hundred cubic feet, on the ground that private property could not be taken for a public use without just compensation, and cite *Newport* v. *Temescal,* 149 Cal. 539, [6 L. R. A. (N. S.) 1098, 87 Pac. 372], and other cases. The cross-complaint was stricken out and the court declined to consider the issues raised thereby. The question presented here is whether or not the decision of the trial court in striking out the cross-complaint was erroneous. Passing the question of the sufficiency of the cross-complaint as an original plea for the recovery of the value of the water right so alleged to be appropriated and dedicated to public use, and assuming that the issue was sufficiently raised in the trial court to present the question whether or not compensation could therein be adjudged to the defendants for the value of the water right so taken as a condition to enjoining the defendants from interfering with that right, we are met at the outset by the fact that the party owning the riparian

lands claimed by the defendants at the time of the appropria-
tion of 1871 or 1896 is not, nor are his heirs or representatives,
parties hereto. The defendants are the grantees of the ri-
parian lands deprived of water by the appropriations of 1871
and 1896. The right to sue for compensation for such use by
the public, assuming that it was a public use, rather than
an adverse use, was in the owner of the water right at the
time it was taken for public use. There is no stipulation nor
pleading showing that that right to compensation was ever
transferred to the defendants. This is a sufficient answer
to the contention of the defendants in that behalf. It is,
moreover, conceded that at the time of the filing of the cross-
complaint in 1915 the right to sue for such compensation
had long since expired under our statute of limitations. But
defendants predicate their claim to compensation here upon
the theory that, notwithstanding such bar, a court of equity
will not grant relief to the plaintiffs until the plaintiffs have
done equity, which they claim requires the payment of just
compensation for such use. [6] Where the five-year period
has been allowed to elapse without any affirmative action by
the riparian owner who claims that his water has been appro-
priated for public use, he is guilty of laches, and should not
be permitted to assert his right to compensation after the
lapse of that period, as against the public or the appropriator
for a public use. Otherwise it would result that five years'
adverse use of water would give a perfect title to a private
person as against the owner thereof without any compensation,
while the public, under similar circumstances, could be com-
pelled after a lapse of five years to pay compensation there-
for as a condition of receiving equitable relief. We therefore
conclude that whether the right of plaintiffs is prescriptive
or an appropriation for a public use, that the action of the
court in striking out the cross-complaint was proper.

Defendants urge that the trial court should have found that
they owned twenty-nine thousand acres of riparian lands in-
stead of nineteen thousand five hundred acres. [7] This
claim is based upon their contention, to quote from their brief,
that "land adjoining riparian land may, by becoming united
therewith in ownership, become itself riparian if accessible
to, susceptible of irrigation thereby, and situate within the
watershed of the stream." Our decisions are to the contrary
and there is nothing in the point urged. (*Lux* v. *Haggin*,
69 Cal. 255, 424, [4 Pac. 919, 10 Pac. 674]; *Boehmer* v. *Big*

*Rock C. & I. Dist.*, 117 Cal. 19, 26, [48 Pac. 908] ; *Anaheim Union Water Co.* v. *Fuller*, 150 Cal. 327, 331, [11 L. R. A. (N. S.) 1062, 88 Pac. 978].)

Judgment affirmed.

Shaw, J., Sloss, J., Melvin, J., Lennon, J., and Angellotti, C. J., concurred.