[Civ. No. 56842. Second Dist., Div. Five. Feb. 13, 1980.]

**MELLIS ANN DE WEESE, Plaintiff and Respondent, v. TIMOTHY ALAN UNICK, Defendant and Appellant.**

COUNSEL

W. Edmund Parent II for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Andrew D. Amerson, Deputy Attorneys General, Stanley M. Roden, District Attorney and Bonnie Baker, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—On May 12, 1970, a child was born to Mellis Ann De Weese (hereinafter De Weese), who at that time was not married. A paternity suit was commenced by De Weese in the Santa Barbara Superior Court naming Timothy Alan Unick (hereinafter Unick) as the father. A blood test was taken by the parties in the early part of October 1974, the results of which did not exclude the possibility of Unick's paternity. Through his attorney, Unick stipulated that he

was in fact the natural father of the child and agreed to pay child support. Pursuant to that stipulation, the court rendered a judgment on October 29, 1974.

On February 13, 1979, the mother, De Weese, filed a motion for an order to show cause for modification of child support payments. Thereupon, Unick filed a motion on April 16 of that year, asking the court to order De Weese and her child to submit to a newly developed blood test. On April 30, both motions were denied. In spite of this denial, both parties subsequently stipulated to increased child support. On June 1, 1979, the court hearing the matter ordered Unick to pay increased child support payments in conformity with that stipulation.

Appellant, Unick, seeks review of the order made on April 30, 1979, denying his motion to require respondent, De Weese, and her child to submit to an HLA blood test.

■ It is appellant's contention that he is not foreclosed from HLA blood testing either by his stipulation to paternity or the judgment rendered against him. In support of his contention, appellant points out that a new blood test, known as the "Human Leucocyte Antigen" (HLA) blood test, has been developed since appellant, respondent and child submitted to a blood test in October of 1974. Appellant argues that this blood test is of greater accuracy than that of the blood test taken in 1974 and by virtue of that fact this court should authorize its use. Furthermore, appellant contends that he and his family have had doubts as to whether he was, in fact, the father of respondent's child.

In making this contention that the newly developed HLA blood test's accuracy compels its use, appellant cites the case of *Cramer* v. *Morrison* (1979) 88 Cal.App.3d 873 [153 Cal.Rptr. 865]. The court in that case did, in fact, conclude that the HLA blood test was superior in accuracy to the older and more commonly used and relied upon blood tests: furthermore, the court advocated its use in the future. In no way, however, did the court suggest that it should be used to supplant the conclusions drawn from the tests previously relied upon in adducing final judgments in other paternity proceedings.

In his motion, appellant cites Evidence Code section 892 in support of the proposition that the HLA blood test should be used in this case; we do not agree with his interpretation of that statute. In relevant part, section 892 states: "In a civil action in which paternity is a relevant

fact, the court . . . shall upon motion of any party to the action made at a time so as not to delay the proceedings unduly, order the mother, child and alleged father to submit to blood tests." The statute goes on to state: "If any party refuses to submit to such tests, the court . . . shall resolve the question of the paternity against such party or enforce its order if the rights of others and the interests of justice so require." Clearly this statute was conceived to aid in proceedings wherein the issue of paternity had not yet been resolved and incorporated in a final judgment.

In his brief, appellant suggests an alternate theory under which he would be entitled to use the HLA test. His theory is based on Evidence Code section 897, which states in part: "Nothing . . . in this chapter shall be deemed or construed to prevent any party to any action from producing other expert evidence on the matter covered by this chapter. . . ." Reliance on this code section as well as all admissions or requests for admissions is based on one basic premise, that being, to qualify for admission all evidence must be relevant.[1] Accordingly, the Evidence Code clarifies what is meant by relevant evidence in section 210: "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any *disputed* fact that is *of consequence* to the determination of the action." (Italics added.)

An application of sections 210 and 350 of the Evidence Code dictates that neither section 897 nor section 892, as discussed above, merit the introduction of this new blood test in that paternity is no longer in dispute pursuant to a written finalized judgment rendered by the trial court and, as such, it has no consequential effect on the determination of that action.

What appellant proposes, is to explore the issue of paternity anew, four and one-half years after a judgment determining the question. This exploration comes at an entirely different stage of the proceedings than that anticipated by the Evidence Code, or encountered in the case law in which those statutes (§§ 892, 897) have been applied. It is our opinion that such proposals are inappropriate in light of the principle of res judicata.

■ "In civil cases the doctrine of res judicata bars parties or persons in privity with them from relitigating a cause of action finally deter-

---

[1]Evidence Code section 350 states: "No evidence is admissible except relevant evidence."

mined by a court of competent jurisdiction." (*In re Russell* (1974) 12 Cal.3d 229, 233 [115 Cal.Rptr. 511, 524 P.2d 1295]; *In re Crow* (1971) 4 Cal.3d 613, 622 [94 Cal.Rptr. 254, 483 P.2d 1206]; *Martin* v. *Martin* (1970) 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662]; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892].)

■ The social policies which underlie the barring of subsequent litigation on a previously tried and finalized issue are based on considerations which seek the most reasonably efficient and economic use of judicial resources as well as the desire to promote peace and tranquility in the minds of those who might otherwise suffer due to the fear of constantly recurring litigation. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292 and cases cited therein.) As stated in *Ellena* v. *State of California* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110], "'The rule of *res judicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy....'" (*Id.* at p. 260, quoting *Miller & Lux, Inc.* v. *James* (1919) 180 Cal. 38, 44 [179 P. 174].)

■ Restatement of Judgments (1942) section 1, page 9, states as follows: "Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has *jurisdiction* over the parties and the cause of action, and the court has *finally* decided the controversy, the interests of the State and the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them." (Italics added.) The test as set forth in the Restatement and followed in *Bernhard* v. *Bank of America, supra*, 19 Cal.2d 807, is two-pronged: (1) The court must have *jurisdiction* over both the parties and the subject matter in the dispute, and (2) the same cause of action must be *fully litigated* on its merits. ■ Since both parties have submitted to the jurisdiction of the Superior Court of Santa Barbara County and filed their pleadings therein, the first prong of the test appears to be complied with. The second prong also appears to be complied with. The parties cannot claim their controversy has not been litigated because on October 29, 1974, a final judgment was rendered, establishing paternity in the appellant, allowing for reasonable visitation rights and assigning child support as well as modification thereof. ■ As was pointed out in Witkin, "A judgment ...by...stipulation, is as conclusive a...bar as a judgment rendered after trial." (4 Witkin, Cal. Procedure (2d. ed. 1971) Judgment, § 170, p. 3312, and cases cited therein. See also *Ellena* v. *State of California* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110].)

Appellant notes that the judgment of October 29, 1974, is not final in all respects. This statement is unassailable in light of Civil Code section 4700, subdivision (a), which provides for future modifications of any current judgment awarding child support. However appellant's argument that the interlocutory nature of a judgment for child support payments should apply to the entire judgment, in effect making the whole judgment interlocutory, is unfounded. An application of the time honored maxim: "expressio unius est exclusio alterius" is in order. Under that maxim, "...the expression of one thing in a statute implies the intentional exclusion of the omitted thing." (*Garson* v. *Juarique* (1979) 99 Cal.App.3d 769, 774 [160 Cal.Rptr. 461]; *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537].)

Civil Code section 4700, subdivision (a), reads in pertinent part: "...*Any order for child support may be modified or revoked as the court may deem necessary*, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke. The order of modification or revocation may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or revoke, or to any date subsequent thereto." (Italics added.) ■ Nowhere in this statute is there any mention of the modifiability or revocability of a judgment determining paternity. The inference arises that the right to modify a judgment is reserved exclusively to an award of child support and *not* a determination of paternity. Thus, we conclude that the judgment rendered on October 29, 1974, was indeed final in all respects appurtenant to appellant's contentions.

■ The Restatement of Judgments further elucidates the doctrine of res judicata and the court's desire to favor one final judgment, by pointing out, in section 1, comment b, that res judicata is applicable only where the judgment is *final* and the *period of time* within which to subject it to direct attack, e.g., appeal or through a motion to vacate, has elapsed.

■ Pursuant to California Rules of Court, rule 2(a), appellant had 60 days within which to file an appeal with this court. Moreover, Code of Civil Procedure section 473 affords any party to a judgment the ability to move for relief from that judgment within six months of its issue. There appears to be no indication that appellant made any attempt to

comply with or utilize either of these statutes. Beyond these statutory rights to challenge an unfavorable judgment, appellant has had the right to bring an independent equitable action for extrinsic fraud or mistake. Such an action is not controlled by any set time limit and therefore could have been brought at any time within the past five years since the judgment against him was rendered. (*Daut* v. *Daut* (1950) 98 Cal.App.2d 375, 379 [220 P.2d 63].)

This court takes judicial notice of the pleadings in the lower court wherein appellant was fully represented at all stages by competent counsel and chose to stipulate that he was the father, knowing full well that he had the opportunity of unlimited discovery and other technological processes at his means to ascertain the paternity of the child. The law abhors bastardy proceedings and we find that appellant is equitably estopped from denying paternity. He has made an intelligent waiver of his rights in stipulating with the aid of counsel in admitting to paternity. We can only presume that he continued to make payments without complaint or objections for a period of approximately four and one-half years before the advent of the technology he now proposes to employ. While we hesitate to speculate upon the motivation behind such an errant appeal of a paternity issue, this court does not find appellant's arguments persuasive enough to warrant a relitigation of the issues finalized by the court below.

We are obliged to subscribe to the line of thinking espoused in the Restatement of Judgments, section 1, comment b, which states in pertinent part: "... ■ The principle stated in this Section is applicable although the party against whom a judgment is rendered is later in a position to produce better evidence so that he would be successful in a second action." Thus, appellant is barred from contesting the original judgment.

Ashby, J., and Hastings, J., concurred.

On February 29, 1980, the opinion was modified to read as printed above.