TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |
|---|---|
| OPINION | : |
| | : |
| of | : |
| | : |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| ANTHONY S. Da VIGO | : |
| Deputy Attorney General | : |
| | : |

No. 92-1006

<u>JULY 14, 1993</u>

_____

THE HONORABLE WILLIAM A. CRAVEN, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a general law county or a general law city enter into a "job order contract" in excess of $50,000 for the performance of public projects involving minor construction, and the renovation, alteration, painting, and repair of existing facilities?

CONCLUSION

A general law county or a general law city may not enter into a "job order contract" in excess of $50,000 for the performance of public projects involving minor construction, and the renovation, alteration, painting, and repair of existing facilities, except under narrowly defined statutory conditions applicable only to counties.

ANALYSIS

A "job order contract" (JOC) is a competitively bid, firm fixed price, indefinite quantity contract for the performance of minor construction, as well as the renovation, alteration, painting, and repair of existing public facilities. A JOC, generally a multi-year contract including a base year and multiple option years, is bid and awarded prior to the identification of any specific projects to be performed. Thus, a typical JOC involves a variety of tasks such as the remodeling, renovation, and repair, including roofing, electrical, plumbing, and painting, of all of a public agency's buildings for a period of years.

A JOC is a fixed price agreement in the sense that it is based upon specified charges contained in a unit price book (prepared by the public agency or by independent commercial sources) setting forth detailed repair and construction tasks, including task descriptions, specifications, units of measurement, and unit prices for each task. A contractor's bid is expressed in terms of a percentage of the specified book charges such as 115 percent or 125 percent. The book

1. 92-1006

is then used to determine the costs of each proposed project during the term of the contract. The total JOC value may be specified as a range with a certain guaranteed minimum, typically from $50,000 to $250,000, and a maximum which may extend beyond $10 million.

The inquiry presented for consideration is, essentially, whether such a contract is authorized under the provisions of the Local Agency Public Construction Act (Pub. Contract Code, §§ 20100-20920)[1] or the Uniform Public Construction Cost Accounting Act (§§ 22000-22045) pertaining to cities and counties. We conclude generally in the negative.

The Local Agency Public Construction Act deals separately with counties, cities, school districts and other public agencies. With regard to public works contracts awarded by counties (§ 20120),[2] whenever the project cost of construction, alteration, or repair exceeds $4,000; or in the case of a county containing a population of 500,000 or more,[3] $6,500; or in the case of alteration or repair of county owned buildings in a county containing a population of 2 million or more, $50,000; the work must be done by contract in accordance with the provisions of the act pertaining to counties. (§§ 20121, 20122, 20123.) Generally, the contract must be let to bid and awarded to the lowest responsible bidder. (§§ 20125, 20128.) With respect to cities, when the expenditure required for a public project exceeds $5,000, it must be contracted for and let to the lowest responsible bidder. (§ 20162.)

The Legislature has provided an alternative method for the bidding of public works projects by public entities. (§ 22001.) The Uniform Public Construction Cost Accounting Act applies generally to a "public agency" including counties and cities. (§ 22002, subd. (a).) Under this act, the governing board of either a city or a county may, by resolution and notification to the State Controller, elect to become subject to the procedures set forth in the act. (§ 22030.) In such event, public projects[4] in excess of $25,000 but not in excess of $75,000 may be let to contract by informal bidding procedures established by ordinance. (§ 22032, subds. (a), (b).) Public projects in excess of $75,000 must, with certain exceptions not pertinent here, be let to contract by formal bidding procedure. (§ 22032, subd. (c).)

Under either statutory scheme, it is expressly unlawful for a county or a city to split or separate into smaller work orders or projects any public works project for the purpose of evading

---

[1] Undesignated section references herein are to the Public Contract Code.

[2] A "public works contract" is defined generally as ". . . an agreement for the erection, construction, alteration, repair, or improvement of any public structure, building, road, or other public improvement of any kind." (§ 1101; see also, Gov. Code, §§ 25358, 31000 [maintenance, care, upkeep].)

[3] Special provisions apply to contracts between $4,000 and $10,000, and to contracts in excess of $10,000, let by counties containing a population of less than 500,000. (§§ 20150 - 20150.14.) An analysis of those provisions, which would be more analogous to the discussion in respect to cities, suggests no basis for a conclusion contrary to that reached in connection with counties generally. As in the case of cities (§ 20161), a "public project" is expressly defined to include "a project" for the erection, improvement, and repair of public buildings and works. (§ 20150.2.)

[4] "Public project" includes construction, reconstruction, erection, alteration, renovation, improvement, demolition, repair, painting, or repainting of any publicly owned, leased, or operated facility. (§ 22002, subd. (c).)

the provisions requiring public works to be done by contract after competitive bidding. (§§ 20123.5, 20163, 22033.)[5]

As we have seen, all public projects over $50,000 (and many below $50,000) are subject to contract bidding. (§§ 20121-20123, 20150.4 [counties]; § 20162 [cities]; §§ 22032, subds. (a),(b), 22034 [alternative informal procedure]; §§ 22032, subd. (c), 22037 [alternative formal procedure].) In our view, a public project, or public works project, does not encompass a combination of projects which are essentially unspecified at the time of bidding, except as may be otherwise expressly provided by law.

First, such an indefinite combination is not suggested in the context of either statutory scheme. Under the Local Agency Public Construction Act, the board of supervisors is required to adopt, and bidders permitted to examine, and the contractor required to conform with, plans, specifications, strain sheets, and working details for the project. (§§ 20124, 20127, 20128.) The extent to which changes or additions may be ordered in connection with work to be performed under an awarded contract is strictly limited. (§ 20142.) While the board of supervisors is authorized to insert provisions in the contract itself for the performance of such extra work and materials as may be required for "the proper completion or construction of the whole work contemplated," it is clear that the authorization pertains to a specified project in connection with a specific building or structure. (§ 20143.)

Similarly, the board of supervisors of a county with a population of less than 500,000 is required to adopt, and bidders permitted to examine, plans, specifications, and working details for all public projects in excess of $10,000. (§§ 20150.12, 20150.13.) Further, notices by such a county or by a city inviting formal bids must "distinctly state the project to be done." (§§ 20150.8, 20164.)

Counties and cities, including chartered counties and chartered cities, which have elected to become subject to the Uniform Public Construction Cost Accounting Act are required to adopt, and bidders permitted to examine, plans, specifications, and working details for all public projects in excess of $75,000. (§§ 22039, 22040.) Notices inviting formal bids must "distinctly describe the project." (§ 22037.) With respect to public projects of lesser value, public agencies must enact an informal bidding ordinance which, inter alia, "shall describe the project in general terms, [and] how to obtain more detailed information about the project. . . ." (§ 22034, subd. (d).)

Second, and perhaps of paramount significance, the Legislature has addressed itself to the kind of contract which may be generally described as a JOC. Section 20128.5 provides:

"Notwithstanding any other provisions of this article, the board of supervisors may award annual contracts which do not exceed one million dollars ($1,000,000) for repair, remodeling, or other repetitive work to be done according to unit prices. No annual contracts may be awarded for any new construction. The contracts shall be awarded to the lowest bidder and shall be based on plans and specifications for typical work. No project shall be performed under such a contract except by order of the board of supervisors, or an officer acting pursuant to Section 20145.

"For purposes of this section, `unit price' means the amount paid for a single unit of an item of work, and `typical work' means a work description applicable

---

[5] A JOC does not appear to involve the splitting of a public project into smaller work orders for the purpose of evading contract bidding, but rather involves the combination of projects with the purpose or effect of avoiding contract bidding on each project separately.

universally or applicable to a large number of individual projects, as distinguished from work specifically described with respect to an individual project.

"For purposes of this section, `repair, remodeling, or other repetitive work to be done according to unit prices' shall not include design or contract drawings."[6]

To the extent, then, that a JOC (1) involves a county and not a city, (2) has a length of a single year's duration and not longer, (3) is limited to $1 million in value, (4) calls only for repair, remodeling, or other repetitive work and not new construction or design or contract drawings, and (5) is based upon plans and specification for such typical work, section 20128.5 authorizes the execution of the contract.

It may be seen that section 20128.5's unit price contracting authority, "[n]otwithstanding any other provisions of [article 3.5 pertaining to counties]," is specially granted and subject to the specified limitations. It may not be reasonably contended, therefore, that such powers may be exercised by counties which are in excess of such authority, or may be exercised by cities in the absence of an express grant of authority and in the absence of any specified limitations. (See *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236-238; *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 927; 76 Ops.Cal.Atty.Gen. 86, 89 (1993); see also *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; *DeWeese* v. *Unick* (1980) 102 Cal.App.3d 100, 106.) "`The mode prescribed is the measure of the power.'" (*People* v. *Zamora* (1980) 28 Cal.3d 88, 98.)

It is concluded that a general law county or a general law city may not enter into a "job order contract" in excess of $50,000 for the performance of public projects involving minor construction, and the renovation, alteration, painting, or repair of existing facilities, except under the narrowly defined conditions of section 20128.5 applicable only to counties.

* * * * *

---

[6]Section 20145 allows a county containing a population of 6 million or more to have a county officer act in place of the board of supervisors in awarding the contracts.