BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE PATRICIA WIGGINS, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. May a school district enter into a job order contract based upon unit prices for the performance of public works projects?
2. Are job order contracts awarded by the California State University involving $30,000 or more, including individual job orders undertaken pursuant to such a contract involving either more or less than $30,000, subject to statutory requirements specifying the employment of a ratio of apprentices to journeymen?
 CONCLUSIONS
1. A school district may not enter into a job order contract based upon unit prices for the performance of public works projects.
2. Job order contracts awarded by the California State University involving $30,000 or more, including individual job orders undertaken pursuant to such a contract involving either more or less than $30,000, are subject to the calculation of the statutory requirements specifying the employment of a ratio of apprentices to journeymen. The implementation of the employment ratio, appropriately calculated, must be satisfied before the end of the contract, provided that the contractor must endeavor, to the greatest extent possible, to employ apprentices during the same time period that the journeymen in the same craft or trade are employed at the job site.
 ANALYSIS
As generally described in 76 Ops.Cal.Atty.Gen. 126 (1993), a job order contract ("JOC") is a competitively bid, firm fixed price, indefinite quantity contract for the performance of minor construction, as well as the renovation, alteration, painting, and repair of existing public facilities. A JOC is a fixed price agreement in the sense that it is based upon specified charges contained in a unit price book (prepared by the public agency or by independent commercial sources) setting forth detailed repair and construction tasks, including task descriptions, specifications, units of measurement, and unit prices for each task. A contractor's bid is expressed in terms of a percentage of the specified book charges such as 115 percent or 125 percent. The book is then used to determine the costs of each proposed project during the term of the contract, which is normally one or more years. (Id., at pp. 126-127.)
With this factual background in mind, we turn to the two questions presented.[1] The first concerns the execution of a JOC by a local school district, and the second concerns the execution of a JOC by the California State University.
1. Local School Districts
The initial inquiry is whether a local school district may enter into a JOC for a public works project. We conclude that it may not.
The Local Agency Public Construction Act (Pub. Contract Code, §§20100-20920)[2] authorizes counties, cities, school districts, and other public agencies to enter into contracts with private parties for the construction of local projects. With respect to school districts, subdivision (b) of section 20111 provides:
 "The governing board shall let any contract for a public project, as defined in subdivision (c) of Section 22002, involving an expenditure of fifteen thousand dollars ($15,000) or more, to the lowest responsible bidder who shall give security as the board requires, or else reject all bids. All bids for construction work shall be presented under sealed cover and shall be accompanied by one of the following forms of bidder's security. . . ."
Section 20113 makes special provisions respecting emergency repairs. Section 20114 provides for the rendering of services by day labor or force account. Section 20116 provides as follows:
 "It shall be unlawful to split or separate into smaller work orders or projects any work, project, service, or purchase for the purpose of evading the provisions of this article requiring contracting after competitive bidding.
 "The district shall maintain job orders or similar records indicating the total cost expended on each project in accordance with the procedures established in the most recent edition of the California School Accounting Manual for a period of not less than three years after completion of the project.
 "Informal bidding may be used on work, projects, services, or purchases that cost up to the limits set forth in this article. For the purpose of securing informal bids, the board shall publish annually in a newspaper of general circulation published in the district, or if there is no such newspaper, then in some newspaper in general circulation in the county, a notice inviting contractors to register to be notified of future informal bidding projects. All contractors included on the informal bidding list shall be given notice of all informal bid projects in any manner as the district deems appropriate."
In the foregoing statutory scheme pertaining to school districts, we find no reference to the special terms and conditions of a JOC. In contrast, section 20128.5 authorizes counties to execute a JOC:
 "Notwithstanding any other provisions of this article, the board of supervisors may award individual annual contracts, none of which shall exceed three million dollars ($3,000,000), adjusted annually to reflect the percentage change in the California Consumer Price Index, for repair, remodeling, or other repetitive work to be done according to unit prices. No annual contracts may be awarded for any new construction. The contracts shall be awarded to the lowest responsible bidder and shall be based on plans and specifications for typical work. No project shall be performed under the contract except by order of the board of supervisors, or an officer acting pursuant to Section 20145.
 "For purposes of this section, `unit price' means the amount paid for a single unit of an item of work, and `typical work' means a work description applicable universally or applicable to a large number of individual projects, as distinguished from work specifically described with respect to an individual project.
 "For purposes of this section, `repair, remodeling, or other repetitive work to be done according to unit prices' shall not include design or contract drawings."
Section 20128.5's authority is specifically granted and subject to limitations. We reject the contention that such powers may be exercised by school districts in the absence of any express grant of authority and in the absence of any limitations. (See Safer v. Superior Court (1975) 15 Cal.3d 230, 236-238; Board of Trustees v. Judge (1975)50 Cal.App.3d 920, 927; 76 Ops.Cal.Atty.Gen., supra, at pp. 129-130; 76 Ops.Cal.Atty.Gen. 86, 89 (1993); see also Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 196; DeWeese v. Unick (1980) 102 Cal.App.3d 100,106.)
The broad authority granted to school districts in Education Code section 35160 and 35160.1 thus has no application here. Education Code section 35160 states:
 "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."
Education Code section 35160.1 provides:
 "(a) The Legislature finds and declares that school districts . . . have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts . . . should have the flexibility to create their own unique solutions.
 "(b) In enacting Section 35160, it is the intent of the Legislature to give school districts . . . broad authority to carry on activities and programs, including the expenditure of funds for programs and activities which, in the determination of the governing board of the school district . . . are necessary or desirable in meeting their needs and are not inconsistent with the purposes for which the funds were appropriated. It is the intent of the Legislature that Section 35160 be liberally construed to effect this objective.
 "(c) The Legislature further declares that the adoption of this section is a clarification of existing law under Section 35160."
These statutory provisions implement a constitutional amendment (Cal. Const., art. IX, § 14) that was adopted in 1972 to provide as follows: "The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."
Education Code sections 35160 and 35160.1 require a determination of whether a state law or regulation precludes a school district from entering into a JOC. (See Dawson v. East Side Union High School Dist. (1994) 28 Cal.App.4th 998, 1017-1019; Howard Jarvis Taxpayers Assn. v. Whittier Union High School Dist. (1993)15 Cal.App.4th 730, 734-735; California School Employees Assn. v. Del Norte County Unified Sch. Dist. (1992) 2 Cal.App.4th 1396, 1404.) "[W]hile the powers of a school district are broad, they may not be exercised in a manner that is in conflict, inconsistent, or preempted by state law." (83 Ops.Cal.Atty.Gen. 40, 41 (2000).) In this regard, we note that a school district's control over a program or activity may be precluded by the preemptive existence of another comprehensive statutory plan. (Cumero v. Public Employment Relations Bd. (1989) 49 Cal.3d 575, 591
["the local districts are denied control over many aspects of teachers' terms of employment by detailed provisions in the Education Code governing such matters . . ."]; 81 Ops.Cal.Atty.Gen. 218, 221 (1998).)
Applying these interpretive principles to the present inquiry, we find that executing a JOC by a school district would be in conflict with and preempted by the express laws governing the execution of construction contracts by school districts. In accordance with the specific provisions of section 20111, subdivision (b), contracts for school projects involving expenditures of $15,000 or more must be let to the lowest responsible bidder. With respect to projects costing less than the designated amount, section 20116 provides for informal bidding. No authority is granted for school districts to execute a JOC similar in terms to what the Legislature has granted to counties. Indeed, the unique features of a JOC, including the lack of information regarding specific projects at the time of submitting the competitive bids, is entirely inconsistent with the language of section20111.
It is concluded that a school district may not enter into a JOC based upon unit prices for the performance of public works projects.
2. California State University
The second inquiry is whether a JOC awarded by the California State University involving $30,000 or more, including individual job orders of either more or less than that amount, are subject to a statutorily designated employment ratio of apprentices to journeymen. We conclude that the employment ratio requirements would be applicable.
As in the case of counties, the California State University is authorized, subject to specified limitations, to execute a JOC. Section10710 provides:
 "(a) Notwithstanding any other provisions of this chapter, the trustees may award annual contracts that do not exceed three million dollars ($3,000,000) for repair or other repetitive work, or renovation or modification, to be done according to unit prices. The contracts shall be awarded to the lowest responsible bidder and shall be based primarily on plans and specifications for typical work. No project shall be performed under a contract of this type except by order of the trustees. No annual contracts may be awarded under these provisions for capital outlay projects, where the total cost of the project exceeds two hundred fifty thousand dollars ($250,000) or the limit on minor capital outlay projects as determined in the annual Budget Act, whichever is greater.
 "(b) For purposes of this section, `unit price' means the amount paid for a single unit of an item of work, and `typical work' means a work description applicable universally or applicable to a large number of individual projects, as distinguished from work specifically described with respect to an individual project."
A separate statutory scheme contained in the Labor Code governs the employment of apprentices and journeymen on public works projects. Labor Code section 1777.5 provides as follows:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(d) When the contractor to whom the contract is awarded by the state or any political subdivision, in performing any of the work under the contract, employs workers in any apprenticeable craft or trade, the contractor shall employ apprentices in at least the ratio set forth in this section. . . . As used in this section, `contractor' includes any subcontractor under a contractor who performs any public works not excluded by subdivision (o).
 "(e) Prior to commencing work on a contract for public works, every contractor shall submit contract award information to an applicable apprenticeship program that can supply apprentices to the site of the public work. The information submitted shall include an estimate of journeyman hours to be performed under the contract, the number of apprentices proposed to be employed, and the approximate dates the apprentices would be employed. . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(g) The ratio of work performed by apprentices to journeymen employed in a particular craft or trade on the public work may be no higher than the ratio stipulated in the apprenticeship standards under which the apprenticeship program operates where the contractor agrees to be bound by those standards, but, except as otherwise provided in this section, in no case shall the ratio be less than one hour of apprentice work for every five hours of journeyman work.
 "(h) This ratio of apprentice work to journeyman work shall apply during any day or portion of a day when any journeyman is employed at the job site and shall be computed on the basis of the hours worked during the day by journeymen so employed. Any work performed by a journeyman in excess of eight hours per day or 40 hours per week shall not be used to calculate the ratio. The contractor shall employ apprentices for the number of hours computed as above before the end of the contract or, in the case of a subcontractor, before the end of the subcontract. However, the contractor shall endeavor, to the greatest extent possible, to employ apprentices during the same time period that the journeymen in the same craft or trade are employed at the job site. . . .
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(o) This section does not apply to contracts of general contractors or to contracts of specialty contractors not bidding for work through a general or prime contractor when the contracts of general contractors or those specialty contractors involve less than thirty thousand dollars ($30,000).
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
In analyzing the various provisions of Labor Code section 1777.5, we may apply well established rules of statutory interpretation. The overriding objective is to ascertain and effectuate the legislative intent. (Larsen v. State Personnel Bd. (1996) 28 Cal.App.4th 265, 276.) The statutory language itself is the most reliable indicator of the Legislature's purposes. (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826.) Every word, phrase, and sentence in a statute should, if possible, be accorded significance. (Penasquitos, Inc. v. Superior Court (1991) 53 Cal.3d 1180,1186.) Also, each word is to be given its usual and ordinary meaning. (Da Fonte v. UpRight, Inc. (1992) 2 Cal.4th 593, 601.) Finally, a statute must be construed in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts. (People v. Hull (1991) 1 Cal.4th 266, 272.)
In our view, the third and fourth sentences of subdivision (h) of Labor Code section 1777.5, contain the entire prescription concerning the implementation of the hiring ratio. Specifically, "[t]he contractor shall employ apprentices for the number of hours computed . . . before the end of the contract. . . . However, the contractor shall endeavor, to the greatest extent possible, to employ apprentices during the same time period that the journeymen in the same craft or trade are employed at the job site."
We reject the suggestion that the first sentences of subdivisions (d) and (h) of the statute require strict implementation of the ratio whenever a journeyman is employed in an apprenticeable craft or trade. On the contrary, we do not construe the latter sentences as requiring absolute simultaneity of employment in precise ratio of apprentice to journeyman. Rather, in accordance with the precept that a statute must be interpreted in the context of the entire system of which it is a part, in order to achieve harmony among the parts, we deem the sentences in question as providing for the calculation, not the implementation of the ratio. Specifically, the first sentence of subdivision (d) provides simply that the ratio is applicable to a contract for a public works project on which workers in any apprenticeable craft or trade are employed. Similarly, the first and second sentences of subdivision (h) prescribe what journeyman hours are to be included for purposes of calculating the ratio. Accordingly, the hours worked during any day or portion of a day by journeymen, except those worked by any journeyman in excess of eight hours, shall be used to calculate the ratio.
The implementation of the ratio to the entire contract, including its component individual job orders, however, is a distinct issue governed by the third and fourth sentences of subdivision (h). Hence, as set forth above, we conclude that a JOC awarded by the California State University involving $30,000 or more, including individual job orders undertaken pursuant to such contract involving either more or less than $30,000, is subject to the calculation of the statutory requirements specifying the employment of a ratio of apprentices to journeymen. The implementation of the employment ratio, appropriately calculated, must be satisfied before the end of the contract or subcontract as the case may be, provided that the contractor must endeavor, to the greatest extent possible, to employ apprentices during the same time period that the journeymen in the same craft or trade are employed at the job site.
[1] Additional questions were submitted for determination but are the subject of pending litigation. We do not address such inquiries that may be judicially resolved. (66 Ops.Cal.Atty.Gen. Foreword (1983).)
[2] Undesignated section references herein are to the Public Contract Code.