[No. A073879. First Dist., Div. One. Dec. 17, 1996.]

EFREN LOZANO, Plaintiff and Respondent, v.
ANGELA SCALIER, Defendant and Appellant.

## COUNSEL

Schofield & Schiller, Louis F. Schofield and Thomas D. Schofield for Defendant and Appellant.

Steven Riess for Plaintiff and Respondent.

## OPINION

**DOSSEE, J.**—This appeal raises a single legal issue: whether, in order to bring a wrongful death action, the father of a child born out of wedlock must have acknowledged the child (1) after the child's birth (2) in a written and witnessed document. We conclude the statutes impose no such requirements, and we affirm the judgment in favor of the father.

### FACTUAL AND PROCEDURAL HISTORY

On October 3, 1994, 10-month-old Raymond Anthony Lozano was killed instantly in an automobile accident. The car in which he was riding was

being driven by his mother, defendant Angela Scalier. The liability of defendant for the death of young Raymond is not disputed.

Nor is it disputed that plaintiff Efren Lozano is the natural father of Raymond. Plaintiff and defendant never married. However, defendant and Raymond stayed with plaintiff 50-60 percent of the time during Raymond's life. Plaintiff purchased a number of items for Raymond—e.g., crib, stroller, car seat, bedding, diapers, toys, formula and bottles. Plaintiff repeatedly told family members and others that he was Raymond's father. Plaintiff was named as the father on Raymond's birth certificate. Five months *before* Raymond's birth, plaintiff signed as "Father" a medical form, "Financial Policy for Maternity Care," witnessed by defendant's mother.

Plaintiff filed a wrongful death action against defendant. Defendant admitted liability of $100,000 (the amount of her insurance coverage). However, she asserted that plaintiff had no standing to sue as he had never acknowledged Raymond as his child in writing during Raymond's lifetime.

That issue was placed before the trial court in defendant's "motion for judgment." Defendant did not dispute the facts but claimed that Raymond never legally resided with plaintiff[1] and that plaintiff never contributed to Raymond's support.

The trial court found "[b]ased upon the uncontroverted evidence submitted" that plaintiff acknowledged Raymond as his child and contributed to Raymond's support and care. Accordingly, the court concluded plaintiff was entitled to maintain the action for wrongful death and denied defendant's motion for judgment. Thereupon, by stipulation, judgment was entered in favor of plaintiff in the amount of $100,000. Defendant appeals.

## DISCUSSION

At the outset, we reject defendant's argument that the controlling statute here is section 376 of the Code of Civil Procedure. That statute applies upon injury to a child, not death.[2] The present action was unquestionably a wrongful death action brought under section 377.60 of the Code of Civil Procedure.

---

[1]Defendant was a minor legally residing with her own father. Hence, defendant argued her part-time stays with plaintiff did not change the legal residence either of defendant or her infant child.

[2]Before 1949 Code of Civil Procedure section 376 provided a right of action upon the injury *or death* of a child. (Stats. 1939, ch. 425, § 1, pp. 1758-1759.) Former section 377 (the wrongful death statute, now section 377.60) applied only when the decedent was *not* a minor or was a minor who left a spouse and child. (Stats. 1935, ch. 108, § 1, p. 460.) In 1949, however, the statutes were substantially rewritten. (Stats. 1949, ch. 1380, §§ 3-4, pp. 2400-

■   Under the wrongful death statute (Code Civ. Proc., § 377.60), when, as here, the decedent leaves no spouse or child, an action may be brought by "the persons who would be entitled to the property of the decedent by intestate succession." The Probate Code, in turn, provides that for the purpose of determining intestate succession, a relationship between a child and his natural parents exists regardless of the parents' marital status. (Prob. Code, § 6450.) That is, the distinction between legitimate and illegitimate children has been eliminated. However, Probate Code section 6452 further provides that if a child is born out of wedlock, a parent may not inherit *from* that child on the basis of the parent-child relationship unless both of the following requirements are met: (1) the parent acknowledged the child; and (2) the parent contributed to the support or care of the child.

Prior to 1975, the father of an illegitimate child could inherit *from the child* only if the child was legitimated (by marriage of the parents or by adoption). (Former Prob. Code, § 256, added by Stats. 1931, ch. 281, § 256, p. 599 and repealed by Stats. 1975, ch. 1244, § 26, p. 3204.) Maternal and collateral relatives could inherit (*Estate of Paterson* (1939) 34 Cal.App.2d 305, 312 [93 P.2d 825]), but there was no provision for inheritance by the father of a an illegitimate child. (See *id.* at pp. 309-312; 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 147, p. 183.)

However, an illegitimate child could inherit *from his father* if he was either legitimated (by subsequent marriage of his parents or by reception into his father's home) (former Civ. Code, §§ 215, 230; see generally, *Wolf* v. *Gall* (1916) 32 Cal.App. 286 [163 P. 346]) or acknowledged "in writing, signed in the presence of a competent witness." (Former Prob. Code, § 255.)[3]

In interpreting the predecessor statute with identical language, the Supreme Court observed that "[t]he acts required to constitute the acknowledgment are not laid down in the statute. No stated form of acknowledgment is

2402.) Section 377 was extended to apply when a minor decedent left a spouse, a child, *or parents*. And section 376 was amended to provide a right of action only upon *injury* to the child.

Today, the distinction between Code of Civil Procedure section 376 and Code of Civil Procedure section 377.60 continues. When a child dies from his injuries, section 376 authorizes recovery of damages accruing before death and leaves recovery of damages accruing after death to section 377.60. Here, because the child was killed instantly, no damages accrued before death. Thus, the child's father could recover nothing under section 376. His only recovery is under section 377.60.

[3]Former Probate Code section 255 provided in pertinent part as follows: "Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father . . . ." (Added by Stats. 1931, ch. 281, § 255, p. 599 and repealed by Stats. 1975, ch. 1244, § 24, p. 3204.)

there found by which we may be guided. . . . [W]e are bound to assume that the legislature . . . incorporated into the act all that was intended . . . ." (*Blythe* v. *Ayres* (1892) 96 Cal. 532, 582 [31 P. 915].) The court in *Blythe* found that letters written by the decedent, signed in the presence of a witness and acknowledging the relationship of father and daughter, satisfied the statute. (*Id.* at pp. 582-583.) In contrast, another court held that a judicial decree of paternity obtained by the mother when the father denied paternity was not an acknowledgment by the father. (*Estate of Ginochio* (1974) 43 Cal.App.3d 412, 416-417 [117 Cal.Rptr. 565].)

In 1975, as part of a major overhaul recommended by the Law Revision Commission, sections 255 and 256 of the Probate Code were repealed and the Uniform Parentage Act was adopted, abolishing the distinction between legitimate and illegitimate children. (Former Civ. Code, § 7000 et seq., added by Stats. 1975, ch. 1244, § 11, pp. 3196-3201 and replaced by Fam. Code, § 7600 et seq.) The Uniform Parentage Act created a number of presumptions of paternity, including the rebuttable presumption that a man is the father of a child he received into his home and openly and notoriously held out as his natural child. (Former Civ. Code, § 7004, subd. (a)(4), now Fam. Code, § 7611, subd. (d).) In the same legislation, a new section 255 of the Probate Code provided that succession to a child's estate depended upon the existence of a parent-child relationship as established pursuant to the Uniform Parentage Act.[4] Thus, if paternity was not presumed, a judicial decree of paternity was required for succession to the estate of a child. (See *Estate of Sanders* (1992) 2 Cal.App.4th 462 [3 Cal.Rptr.2d 536].)

In 1983, section 255 of the Probate Code was repealed (Stats. 1983, ch. 842, § 19, p. 3024) and replaced by sections 6408 and 6408.5. (Stats. 1983, ch. 842, § 55, pp. 3049, 3083-3084.) Section 6408 continued to permit the establishment of a parent-child relationship pursuant to the Uniform Parentage Act, but section 6408.5 created an exception for adopted children and

---

[4]"(a) The rights of succession by a child, as set forth in this division, are dependent upon the existence, prior to the death of the decedent, of a parent and child relationship between such child and the decedent. [¶] (b) The rights of succession by issue through a deceased child of a decedent, as set forth in this division, are dependent upon the existence, prior to the death of the deceased child, of a parent and child relationship between such issue and a deceased child and upon the existence prior to the death of the decedent or the deceased child of a parent and child relationship between such deceased child and the decedent. [¶] (c) The rights of succession to a child's estate by a parent and all persons who would take an intestate share of the decedent's estate through such parent, as set forth in this division, are dependent upon the existence, prior to the death of the decedent, of a parent and child relationship between the parent and the decedent child. [¶] (d) For purposes of this division, a parent and child relationship exists where such relationship is (1) presumed and not rebutted pursuant to, or (2) established pursuant to, Part 7 (commencing with Section 7000) of Division 4 of the Civil Code." (Former Prob. Code, § 255, added by Stats. 1975, ch. 1244, § 25, p. 3204.)

children born out of wedlock. Subdivision (b) of section 6408.5 provided that a parent may not inherit from a child born out of wedlock on the basis of a parent-child relationship if the child "has neither been acknowledged by nor supported by that parent." (Stats. 1983, ch. 842, § 55, p. 3084.)

In 1984, section 6408.5 of the Probate Code was amended to require that the parent of a child born out of wedlock may not inherit from the child "unless the parent both (1) acknowledged the child and (2) contributed to the support or the care of the child." (Stats. 1984, ch. 892, § 42, p. 3001.) It is that statutory language which survives today in Probate Code section 6452.[5]

In the present case, plaintiff, the father, successfully argued below that he met both criteria. He acknowledged the child, both in the written financial policy for medical care and in oral announcements to family and friends. And he contributed to the care and support of the child.[6]

Defendant, the mother, however, contends that an acknowledgment must be (1) a witnessed writing and (2) made after the child was born so that the child is identified. Hence, defendant argues that neither the oral acknowledgments nor the financial policy for medical care qualify as an acknowledgment. We are not persuaded.

There are no such requirements on the face of the statute. Nor does the history of the statute compel a conclusion that such requirements should be read into the statutory language. Defendant's assertion that a witnessed writing is required harkens back to former Probate Code section 255, which was applicable to inheritance *by* the child, not from the child. In any event, that statute was repealed in 1975. The current statute, referring only to an undescribed "acknowledg[ment]" of the child has been in effect since 1983. We may properly assume that if the Legislature had intended to impose a requirement that the acknowledgment be in writing, signed in the presence of witnesses, or made after the birth of the child, that the Legislature would have said so. It did not. Instead, it repealed Probate Code section 255, which had required a witnessed writing. The deletion of those details leads us to conclude that the Legislature intended to eliminate those requirements, to ease the evidentiary proof of the parent-child relationship.

---

[5]The Probate Code was repealed in 1990 and the provisions of section 6408.5 were incorporated without change into new section 6408. (Stats. 1990, ch. 79, § 13, p. 463, [repealed]; Stats. 1990, ch. 79, § 14, pp. 721-722 [enacted].) Section 6408, in turn, was repealed in 1993 and replaced by sections 6450-6453. (Stats. 1993, ch. 529, §§ 4, 5.) The pertinent provision for our purposes is, as noted, section 6452, which continues to require that (1) the parent acknowledged the child and (2) the parent contributed to the child's support or care.

[6]Defendant does not challenge the finding that plaintiff contributed to the child's support or care.

Defendant draws an analogy to other statutes in which something more formal is required: Code of Civil Procedure section 376, subdivision (c) (judicial decree of paternity or written, witnessed acknowledgment prior to the injury to bring action for injury to child); Health and Safety Code, section 102750 (written affidavit of paternity to change birth certificate); Family Code section 7574 (sworn declaration of paternity at time of birth for conclusive presumption of paternity). Those statutes operate for different purposes and do not apply here. If anything, they reveal that had the Legislature wanted to impose more stringent requirements for an acknowledgment under Probate Code section 6452, it certainly had precedent for doing so. We decline to read into the statute more than is there.

The judgment is affirmed.

Strankman, P. J., and Stein, J., concurred.