[No. F026210. Fifth Dist. Dec. 16, 1997.]

FRANCES WEIR, as Trustee, etc., Plaintiff and Respondent, v.
KATHERYNE FERREIRA, Defendant and Respondent;
FRANK EDWIN KELM, Defendant and Appellant.

1510

**COUNSEL**

Cyril L. Lawrence for Defendant and Appellant.

Keith C. King for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

The Edith May Kelm revocable inter vivos trust dated May 16, 1990 (the trust), was established by Edith May Kelm (the trustor) for her own benefit.

Upon her death the trust assets were to be distributed to her children, or if they predeceased her, to their issue.[1] Harold Glen Kelm (the decedent), the trustor's son, predeceased her.

Frances Weir, as trustee of the trust (the trustee), filed a "Petition To Ascertain Beneficiaries And Determine Entitlement To Trust Distribution" pursuant to Probate Code[2] section 17200, subdivision (b)(4),[3] asking whether Katheryne Ferreira (respondent) is the issue of decedent. In the alternative, the petition asked whether respondent was entitled to inherit through the decedent pursuant to section 6454.[4] The trustee alleged on information and belief that respondent would have been adopted by the decedent, that the trustor may have "mistakenly believed" respondent to be decedent's adopted daughter, and that "it may have been settlor's intent that [respondent] be included in the class" of the issue of the decedent.

Appellant Frank Edwin Kelm, the decedent's son, opposed the petition, contending that only he and his brother, Herbert Glen Kelm, were the decedent's issue. In support of his opposition appellant filed a declaration of Maria Lourdes Kelm, the decedent's former wife and appellant's mother, and a Portuguese and English copy of a Brazilian guardianship order. Appellant's brother, Herbert Glen Kelm, did not appear in the proceeding.

Respondent filed a statement of interest in support of the petition, stating her entitlement to distribution of an equal one-third share of decedent's one-third share of the trust, as one of the decedent's three lawful issue. Among the grounds asserted for her claim was an attached copy of a 1978 interlocutory judgment of dissolution of marriage entered by the Superior

---

[1]The trustor amended the trust twice, once on March 25, 1993, and again on December 9, 1993. Each amendment repeated the provision for distribution of Harold Glen Kelm's share of the trust estate to his "issue."

[2]Unless otherwise specified, all statutory references are to the Probate Code.

[3]Section 17200 allows a trustee or beneficiary of a trust to petition the court concerning the internal affairs of the trust or to determine the existence of the trust. Proceedings concerning the internal affairs of a trust include "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust, to the extent the determination is not made by the trust instrument."

[4]Section 6454 provides: "For the purpose of determining intestate succession by a person or the person's issue from or through a foster parent or stepparent, the relationship of parent and child exists between that person and the person's foster parent or stepparent if both of the following requirements are satisfied:

"(a) The relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent.

"(b) It is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier."

Court of Ventura County dissolving the marriage of the decedent and Maria Lourdes Kelm. In the judgment the court made an express finding that:

"There are four minor children of this marriage, and they are as follows:

| "Name | Birthdate | Age | Sex |
|---|---|---|---|
| "Herbert | 11/3/61 | 16 | Male |
| "Richard[5] | 2/9/63 | 15 | Male |
| "Katheryne | 8/23/64 | 13 | Female |
| "Frank | 8/8/66 | 11 | Male" |

The child "Katheryne" mentioned above is respondent; "Frank" is appellant here.

The interlocutory judgment incorporates by reference an "Appearance, Stipulation and Waiver of Rights Under the Soldiers' and Sailors' Relief Act of 1940." Therein, the decedent and his wife stipulated there were four minor children of the marriage, including respondent. Various provisions regarding child custody and visitation, child and spousal support, and other terms were included.

Appellant's opposition to the trustee's petition, relying on the declaration of his mother, asserted that respondent was born in Nova Soure, State of Bahia, Brazil on August 23, 1964, to José Ferreira dos Santos and Maria de Lourdes Souza, both Brazilian nationals. At that time, Maria Lourdes Kelm, a Brazilian, and the decedent, an American, were married and living in Brazil with their two natural children, Richard and Herbert. Appellant was born to the Kelms two years later.

According to the declaration, respondent's natural mother asked the Kelms to raise respondent under the terms of a guardianship petition, filed and signed in the municipal court, City of Cipo, State of Bahia, Brazil, on September 14, 1964. Under the terms of the guardianship, the decedent and Mrs. Kelm were directed to: "A) Raise and Direct [respondent's] education. B) Have her under your company and guadianship [sic]. C) Grant or deny her concent [sic] to marry. D) Represent her until she is sixteen (16) in acts of civil life and assist her after this age, in acts that are pertinent, granting consentment [sic]. E) Take her in your company to any part of this country or abroad, at any time, temporarally [sic] or permanently."

In 1973, the Kelms moved to the United States and brought the four children, including respondent, with them. They divorced in 1978.

---

[5]Richard Wayne Kelm predeceased the decedent.

At trial on the trustee's petition the court accepted certified copies of the interlocutory judgment of dissolution and a final judgment entered on January 19, 1979. The court ruled, based on principles of res judicata, respondent was a member of the class of the decedent's issue, entitled to distribution of his share of the trust. In a statement of decision the court gave as a legal basis for its decision that "the doctrines of res judicata and collateral estoppel preclude the relitigation of [respondent's] parentage by [appellant], the heirs and successors in interest to [the decedent], and the Trustee of [the trust]." As a further legal basis for the decision, the court relied on Family Code section 7636, which provides in part as follows: "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes . . . ."

This appeal is from the judgment determining that respondent is one of the lawful children and issue of the decedent.

DISCUSSION

*Appellant Is Barred From Relitigating the Parent-child Relationship Between Respondent and the Decedent*

A. *"Issue" includes a child entitled to take by intestate succession*

Appellant argues that because this case involves language used in a private trust document, the question of respondent's relationship to the decedent turns on the trustor's intent. Because neither the trustor nor the trustee was a party to the marital dissolution action, they are not bound by the court's finding in that action.

While appellant's premise may be correct, it does not support his claim that the court below erred. ■ Words in a private instrument are ordinarily, in the absence of a showing of contrary intent, given the same effect as by statute or case law. (*Wells Fargo Bank* v. *Huse* (1976) 57 Cal.App.3d 927, 935 [129 Cal.Rptr. 522].) Appellant did not offer any evidence that the trustor, in using the word "issue," intended to include or exclude any particular persons. We must, therefore, give the term its statutory meaning.

When the trustor used the term "issue" in the second amendment to her trust in 1993, section 50 defined the term as "all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent." "Child" is defined in section 26 as "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved."

Thus, in the absence of contrary evidence the trust interest goes to those persons entitled to take as children of the decedent under the laws of intestate succession.

The only evidence before the court showing that respondent was a child of the decedent was the finding in the divorce decree. The key question, then, is whether that finding is determinative for inheritance purposes. We find no direct authority answering it. Before reaching that question, we will briefly review cases involving the applicability of res judicata and collateral estoppel to findings of parentage in divorce decrees with regard to issues other than rights of inheritance.

B. *Finding of parental relationship is binding on parties to divorce action*

Res judicata is one of the oldest and least flexible doctrines in American jurisprudence. It is also one of the most important. As our Supreme Court held in *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 797 [126 Cal.Rptr. 225, 543 P.2d 593], "The consistent application of the traditional principle that final judgments, even erroneous ones [citations], are a bar to further proceedings based on the same cause of action is necessary to the well-ordered functioning of the judicial process. It should not be impaired for the benefit of particular plaintiffs, regardless of the sympathy their plight might arouse in an individual case."

". . . When all parties affected are actually or constructively before it with an opportunity to assert their contentions and to appeal from an adverse ruling, the finding of such facts by the court may be reviewed only by an appeal or other timely and available direct attack. This finding cannot be attacked . . . in any collateral proceeding. In such situations the finding is as conclusive as any other finding of fact by the court in the original proceeding." (*Estate of Estrem* (1940) 16 Cal.2d 563, 570 [107 P.2d 36].)

█ Interlocutory and final judgments of dissolution are entitled to res judicata as to all questions determined by them. (*County of San Diego* v. *Hotz* (1985) 168 Cal.App.3d 605, 609 [214 Cal.Rptr. 658]; *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *In re Marriage of Guardino* (1979) 95 Cal.App.3d 77, 87 [156 Cal.Rptr. 883].) California courts have repeatedly held a divorce judgment between husband and wife adjudicating their parental relationship to a child results in an issue adjudication binding them under the doctrine of collateral estoppel. (*Adoption of Bonner* (1968) 260 Cal.App.2d 17, 20 [66 Cal.Rptr. 812] [finding of parentage bars one party from adopting child without

consent of other party]; *Garcia* v. *Garcia* (1957) 148 Cal.App.2d 147, 153-154 [306 P.2d 80] [finding of parentage bars father's new action to declare nonparentage]; *In re Marriage of Guardino, supra,* at pp. 86-87 [absent extrinsic fraud or mistake, finding of parentage cannot be set aside after time for appeal and time for relief under Code of Civil Procedure section 473 has expired]; *County of San Diego* v. *Hotz, supra,* at pp. 608-609 [finding of parentage in dissolution action estops father from denying parentage in statutory support proceeding].) The fact such divorce decree is based upon stipulation as opposed to a contested proceeding is of no consequence. Ignorance or concealment of the true facts concerning parentage, or failure to contest the proceedings, do not constitute extrinsic fraud or mistake. (*In re Marriage of Guardino, supra,* 95 Cal.App.3d at p. 89; *Brown* v. *Superior Court* (1979) 98 Cal.App.3d 633, 636 [159 Cal.Rptr. 604]; *County of San Diego* v. *Hotz, supra,* 168 Cal.App.3d at pp. 608-609; *Adoption of Bonner, supra,* 260 Cal.App.2d at p. 22.) Courts agree an interlocutory decree of divorce is res judicata, between husband and wife, on the issue of parentage in the absence of extrinsic fraud or mistake. (*In re Marriage of Guardino, supra,* at p. 88; *Brown* v. *Superior Court, supra,* at p. 636; *Adoption of Bonner, supra,* at p. 22.)

Appellant asserts exceptions exist where paternity judgments may be attacked. However, the cases relied upon by appellant are not helpful to him. In both *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483 [198 Cal.Rptr. 779, 674 P.2d 750] and *County of Alameda* v. *Mosier* (1984) 154 Cal.App.3d 757 [201 Cal.Rptr. 550] the court remanded the matter for the trial court to determine whether the father in a paternity action had made a valid waiver of his rights when he agreed to the entry of judgment.

Appellant primarily bases his claim upon the belief that "[C]hildren and others, not parties to the dissolution, are not barred by the decree from challenging [respondent's] paternity in a subsequent proceeding." California courts have held a child who is not a party to the divorce action is not bound by the determination of her status made in that proceeding. (*Adoption of Stroope* (1965) 232 Cal.App.2d 581, 585 [43 Cal.Rptr. 40]; *Gonzales* v. *Pacific Greyhound Lines* (1950) 34 Cal.2d 749, 753 [214 P.2d 809]; *Adamson* v. *Adamson* (1962) 209 Cal.App.2d 492, 501 [26 Cal.Rptr. 236].) In *Ruddock* v. *Ohls* (1979) 91 Cal.App.3d 271 [154 Cal.Rptr. 87], this court found the parent-child relationship to be the most fundamental right a child possesses. Therefore, "We hold that in dealing with the prospective rights of a minor child to establish paternity, the child, if not formally a party, is not bound by a paternity determination in a marital dissolution action." (*Id.* at p. 278.)

In *Adamson,* the wife was granted an interlocutory judgment of divorce which found true an allegation that there were "no children the issue of said

marriage." The wife later requested modification, asserting a child had been conceived by the parties prior to the granting of interlocutory judgment. In addition, a second child, born earlier during the marriage was also a natural child of the marriage. The child had previously been cared for by the wife's parents. The trial court granted the request for modification and ordered the husband to pay support for both children. (209 Cal.App.2d at pp. 496-498.)

The husband appealed. The court found the judgment to be res judicata on the issue of parentage between husband and wife. "It is to be kept in mind, however, that the children involved here are not foreclosed from instituting an action to have the husband declared to be their father and for an order for support and maintenance. In other words, the doctrine of res judicata cannot be invoked in this case by the husband against the children, even though the children can under the circumstances invoke the doctrine against him." (*Adamson* v. *Adamson, supra,* 209 Cal.App.2d at p. 501.)

Similarly, in *Gonzales* v. *Pacific Greyhound Lines,* the wife swore in a divorce action that her husband was not the father of her son Kenneth. Custody was awarded to the wife, and the husband was not required to contribute to Kenneth's support. Subsequently, the husband was killed in an accident. In a wrongful death action, the question of whether Kenneth was an heir of the husband arose. The Supreme Court held the interlocutory decree was not admissible in the wrongful death action. "While the interlocutory decree stood as a final adjudication between the husband and the wife on the issues there submitted [citations], [Kenneth] was not a party to that litigation and he was not bound by the determination of his status therein." (34 Cal.2d at p. 753; but see *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 951 [126 Cal.Rptr. 805, 544 P.2d 941] [children of divorced parents *were* precluded from bringing independent action against father for past child support and misappropriation of trust assets where mother acted in a representative capacity with identity of interest to children].)

The cases relied upon by appellant do not help him here. Those cases might support an action by respondent attacking the finding of parentage as to her, but she is not making any such claim. Neither is appellant attacking the finding as to himself. Instead, he challenges the finding as to respondent only. The validity or invalidity of appellant's claim rests on determining whether the parentage finding was conclusive as to the decedent on the question of respondent's rights of inheritance, and, if so, whether appellant was in privity with the decedent so that he also is bound by the finding. We now turn to those questions.

### C. *The parentage finding in the dissolution judgment was binding on the parties to that action as to respondent's right to inherit from the decedent*

The existence of a parent and child relationship for the purposes of determining intestate succession "by, through, or from" a person is governed by sections 6450 through 6455. Section 6453 provides:

"For the purpose of determining whether a person is a 'natural parent' as that term is used in this chapter:

"(a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act, Part 3 (commencing with Section 7600) of Division 12 of the Family Code.

"(b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist:

"(1) A court order was entered during the father's lifetime declaring paternity.

"(2) Paternity is established by clear and convincing evidence that the father has openly held out the child as his own.

"(3) It was impossible for the father to hold out the child as his own and paternity is established by clear and convincing evidence."

Family Code section 7611[6] specifies conditions under which a natural parent and child relationship is presumed. There is no contention any of those conditions were shown to exist here. Therefore, subdivision (a) of section 6453, which requires a presumption of parentage, is inapplicable.

 Might subdivision (b) of section 6453 apply? That subdivision refers to "other provisions of the Uniform Parentage Act" (UPA) which may

---

[6]This section was included in the enactment of the Family Code, operative January 1, 1994. (See Stats. 1992, ch. 162, § 10; Stats. 1993, ch. 219, § 176.) It continued former Civil Code section 7004, subdivision (a), without substantive change. (See Cal. Law Revision Com. com., 29E West's Ann. Fam. Code (1994 ed.) § 7611, p. 159.)

be invoked to establish the parent and child relationship, but expressly excludes actions under Family Code section 7630, subdivision (c) unless one of three alternative conditions exists. A court order declaring the parent and child relationship was entered during the decedent's lifetime, seemingly satisfying the condition in section 6453, subdivision (b)(1).

The only reported case interpreting this subdivision is *Estate of Sanders* (1992) 2 Cal.App.4th 462 [3 Cal.Rptr.2d 536].[7] In *Sanders*, a mother, acting as guardian ad litem for her minor child, filed a petition for heirship and determination of entitlement to distribution of the estate of a deceased man who the mother claimed was the child's father. She sought to establish paternity through DNA genetic testing. Her petition and request for testing were denied. The appellate court affirmed. After reviewing the legislative history, the court concluded that former section 6408, subdivision (f)(2) merely allows reliance on other provisions of the UPA to establish parentage. However, because there was neither an unrebutted presumption of paternity, a court order determining paternity during the decedent's lifetime, nor clear and convincing evidence the decedent openly and notoriously held out the minor as his child, none of the requirements of former section 6408, subdivision (f)(2) were satisfied. (*Estate of Sanders, supra*, at pp. 471-476.) No authority existed for proving paternity through DNA testing after the decedent's death. (*Id.* at pp. 477-478.) *Sanders* does not address the question facing us because here there *was* a court judgment establishing the parent and child relationship entered during the decedent's lifetime.

Appellant argues the dissolution decree cannot be given the status of a judgment under the UPA. Specifically, he claims there was no compliance with former Civil Code section 7008,[8] which requires joinder of a child 12 years of age or older and notice to the natural parents.

While the record does not reflect that respondent was joined as a party in the dissolution action or that her alleged natural parents were given notice and an opportunity to be heard, any procedural defects in that regard do not affect the judgment's validity as to the parties who were before the court. Since the 1971 revision of Code of Civil Procedure section 389, failure to join "indispensable" parties does not deprive a court of the power to make a legally binding adjudication between the parties properly before it. (See generally, 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 165, p. 223.)

---

[7]The *Sanders* court dealt with former section 6408, subdivision (f)(2), the predecessor to section 6453, subdivision (b). There are no significant differences between the two statutes.

[8]The provisions formerly found in Civil Code section 7008 now appear in Family Code section 7635.

In *Jermstad* v. *McNelis* (1989) 210 Cal.App.3d 528 [258 Cal.Rptr. 519], the natural father brought an action pursuant to the UPA[9] to determine the existence of a father and child relationship. The natural mother opposed the action unsuccessfully. She then appealed claiming, among other things, the judgment was defective because prospective adoptive parents, with whom the child had previously been placed, were not joined as parties to the action. The appellate court, assuming the adoptive parents fell within the ambit of the compulsory joinder provisions of Code of Civil Procedure section 389, held that the claim of error for failure to join was not cognizable on the mother's appeal because she did not raise the claim in the trial court and there was no compelling reason of equity or policy warranting belated consideration. (210 Cal.App.3d at p. 538.)

We reach the same conclusion here. Nothing in the record shows that either of the parties to the dissolution action made any objection therein to the failure to join respondent or to the failure to give notice to respondent's alleged natural parents. Further, appellant does not advance any compelling reason of equity or policy why either the decedent, his former wife, or those in privity with them should be allowed to attack the parentage determination nearly 20 years after it was made and became final. Indeed, the equitable and policy considerations evident here support treating the parentage finding as conclusive.

In *Guardianship of Claralyn S.* (1983) 148 Cal.App.3d 81 [195 Cal.Rptr. 646], this court expressly recognized public policies of maintaining parent-child relationships and ensuring the finality of paternity judgments, even to the point of precluding a challenge brought by grandparents who were not parties to the action in which the parentage finding was made. (148 Cal.App.3d at p. 85.) A fortiori, those policies should prevail against challenges made by the parties or those in privity with the parties.

An early decision of our state's highest court also emphasized the importance of a final determination of paternity. *Estate of Camp* (1901) 131 Cal. 469 [63 P. 736] involved a challenge to adopted children's right to inherit from their adoptive parent. The challenge asserted that when the adoption order was made, the children had not been abandoned by their natural parents. The trial court excluded evidence of the alleged nonabandonment. The Supreme Court affirmed, holding that the recital of abandonment in the adoption order was not subject to collateral attack. The court said: "Otherwise the existence of this fact and the status of the children would be always uncertain, since the evidence might not be the same at all investigations, and might be regarded with different effect by different tribunals, and the

---

[9]The UPA was then codified in Civil Code sections 7000-7021.

adoption be held by one court to have been valid, while another court would hold it to have been of no avail. Whether the parents of the child in a direct proceeding against the adopting person for the recovery of the persons of the children would be bound by this determination of the judge, is not involved herein. It is very clear that, if an action had been brought against the decedent in his lifetime for necessaries supplied for the support of the children, he would not have been permitted to show in his defense that at the time of the proceedings for their adoption the parents had not in fact abandoned them. He would have been estopped by his recital of their abandonment in his petition." (*Estate of Camp, supra*, at p. 471.)

The same policy applies here. Neither the decedent nor his former wife could avoid the effect of the parentage finding as to respondent on issues of support or right to custody, and we see no reason why they, or anyone deriving rights from them, should be allowed to relitigate the question as regards another legal consequence (i.e., the right to inherit). Although the marital dissolution action was not denominated as one brought pursuant to the UPA, and although all procedural requirements of an action under Family Code section 7630 may not have been followed, the issue adjudicated (parentage) was identical with the issue that would have been presented in a UPA action, and it should be given the same effect as between the parties and their privies. (See *County of San Diego* v. *Hotz, supra*, 168 Cal.App.3d at p. 608 [equating parentage finding in marital dissolution action with one under UPA].) We thus decide that the interlocutory and final judgments of dissolution declaring the decedent's paternity of respondent, both of which were entered during the decedent's lifetime, meet the requirements of section 6453, subdivision (b)(1). The parties to the dissolution and those in privity with them are collaterally estopped to deny respondent's rights of intestate succession as a child of the decedent. This holding is consistent with Family Code section 7636 declaring that the judgment or court order "determining the existence or nonexistence of the parent and child relationship is determinative for all purposes" with one exception not applicable here.

### D. *Appellant was in privity with the decedent*

The sole remaining issue is whether appellant was in privity with a party to the dissolution proceeding so that the judgments establishing the parental relationship between the decedent and respondent should also be binding on him.

█ "The loose term 'privity' refers to some *relationship or connection* with the party that makes it proper to hold 'privies' bound with the actual

parties. 'Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a person so identified in interest with another that he represents the *same legal right.*' " (7 Witkin, Cal. Procedure, *supra*, Judgment, § 392, p. 961.)

 Here appellant's sole interest in the trust is as a member of a class of remaindermen which is defined by their relationship to the decedent. It is only because appellant is a child of the decedent that he has any rights. Because the point in dispute (whether respondent is a child of the decedent) is the same point adjudicated in the dissolution action, and because its determination is binding on the decedent, it should likewise be binding on those claiming through the decedent. As the Supreme Court said in *Estate of Camp*, *supra*, 131 Cal. 469, 471: "Inasmuch as the rights of the appellant herein are derived solely through and under the decedent, he can have no greater right to question the validity of the order than would the decedent." (See also *Evans* v. *Celotex Corp.* (1987) 194 Cal.App.3d 741 [238 Cal.Rptr. 259].)

The trial court properly held that appellant is barred by principles of res judicata and collateral estoppel from challenging respondent's right to distribution of a share of the decedent's interest in the trust as one of his issue. In light of our conclusion, it is unnecessary for us to consider other issues addressed by the parties.

DISPOSITION

Judgment affirmed. Costs to respondent Katheryne Ferreira.

Dibiaso, Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied January 13, 1998, and appellant's petition for review by the Supreme Court was denied March 25, 1998.