94 Cal.Rptr.2d 638 (2000)
79 Cal.App.4th 1380
ESTATE OF Denis H. GRISWOLD, Deceased.
Norma B. Doner-Griswold, Petitioner and Respondent,
v.
Francis V. See, Objector and Appellant.
No. B128933.
Court of Appeal, Second District, Division Six.
March 22, 2000.
Review Granted July 12, 2000.
*639 Kitchen & Turpin, David C. Turpin and Herb Fox, Santa Barbara, for Objector and Appellant.
Mullen & Henzell and Lawrence T. Sorenson, Santa Barbara, for Petitioner and Respondent.
GILBERT, P.J.
An unmarried woman in Ohio gives birth to a son and then files a "bastardy complaint" against the infant's father. The father admits paternity and the court orders him to pay child support. The father makes all court-ordered support payments to the court clerk until the child is 18 years old.
The father and son never meet or communicate. The father marries and has two children who are unaware that they have a half-brother. The mother marries and moves to California with her infant son and husband.
Fifty-five years later, the son dies intestate leaving a surviving spouse but ostensibly no other heirs. Are the two half-siblings entitled to share in the separate property of the decedent's estate? We conclude the answer is yes.
Heir finder Francis V. See appeals an order denying his petition to determine entitlement to distribution in the estate of Denis Howard Griswold. (Prob.Code, § 11700 et seq.)[1] We reverse.

FACTS
On October 10, 1996, Denis Howard Griswold died intestate, survived by his wife Norma B. Doner-Griswold. Griswold's parents died before him and he had no children. Doner-Griswold petitioned for and received letters of administration and authority to administer her husband's modest estate, consisting entirely of separate property.
On June 8, 1998, Doner-Griswold filed a petition for final distribution, proposing a distribution of estate property, after payment of attorney's fees and costs, to herself as the surviving spouse and sole heir. (§ 6401, subd. (c)(1) [surviving spouse receives entire intestate separate property estate if decedent leaves no issue, parent, sibling, or issue of a sibling].) Francis V. See filed objections to the petition for final distribution and also filed a petition to determine entitlement to distribution. (§ 11700 et seq.) See, a self-described "forensic genealogist," obtained an assignment of partial interest in the Griswold estate from Margaret Loera and Daniel Draves. Loera, Draves, and Griswold are the children of John Edward Draves, deceased.
At the hearing on the entitlement petition, See and Doner-Griswold stipulated to the admissibility of certain Huron County, Ohio, court documents in addition to the following facts:
On July 12, 1941, in Ashland, Ohio, Betty Jane Morris gave birth to a son, whom she named "Denis Howard Morris." On the birth certificate she stated John Edward Draves of New London, Ohio, as the father. Shortly thereafter, Morris filed a "bastardy complaint" in the Huron County, Ohio, juvenile court. Draves thereupon was arrested but later posted bail for his release. Prior to trial, he admitted paternity. A court journal entry states that Draves "confessed in Court that the *640 charge of the plaintiff is true; he is therefore adjudged by the court to be the reputed father of the said child...." The court then ordered Draves to pay medical expenses related to Morris's pregnancy as well as $5.00 weekly child support. For 18 years, Draves paid the court-ordered support by payments to the Huron County court clerk.
Morris married Fred Griswold and moved to California. She referred to her son as "Denis Griswold," a name that he used until his death. Indeed, Griswold believed for many years that Fred Griswold was his father.
Meanwhile, Draves married in Ohio and had two children, Margaret and Daniel. Neither Draves nor his two children had any communication with Griswold. Draves's children did not know of Griswold's existence until after Griswold's death. Draves prepared a last will and testament in 1991 but did not mention or refer to Griswold. Draves died in 1993 and Huron County probate court documents state a surviving spouse and only two childrenMargaret and Danielas heirs.
Sometime after 1978, Griswold learned that John Draves, not Fred Griswold, was his father. Griswold may have learned this in 1978 when his mother divorced Fred Griswold or in 1983 when his mother died, or perhaps thereafter. Nevertheless, Griswold made no attempt to contact Draves or other members of the Draves family.
The stipulated facts and all reasonable inferences therefrom are clear that Draves and Griswold had no contact and that Draves's children were not aware that they had a half-brother until after Griswold died.
The probate court denied See's petition to determine entitlement. It found that See did not demonstrate that Draves was Griswold's "natural parent" pursuant to section 6453 or that Draves "acknowledged" Griswold as his child pursuant to section 6452.
See appeals and contends that he established the entitlement of Griswold's half-siblings to a share in the separate property of the estate, pursuant to section 6452. That section provides: "If a child is born out of wedlock, neither a natural parent nor a relative of that parent inherits from or through the child on the basis of the parent and child relationship between that parent and the child unless both of the following requirements are satisfied: (a) The parent or a relative of the parent acknowledged the child. [¶] (b) The parent or a relative of the parent contributed to the support or the care of the child."

DISCUSSION

I.
See argues that the Ohio judgment conclusively establishes that Draves is the "natural parent" of Griswold pursuant to sections 6452 and 6453. He relies upon Weir v. Ferreira (1997) 59 Cal.App.4th 1509, 1520-1521, 70 Cal.Rptr.2d 33, concluding that a divorce decree describing the children of a marriage is determinative for inheritance purposes. (Id., at p. 1520, 70 Cal.Rptr.2d 33 ["[E]quitable and policy considerations evident here support treating the [20-year-old] parentage finding as conclusive."].)
Doner-Griswold responds that See technically cannot establish natural parentage because he lacks standing to do so. She points out that See is not within the class of persons set forth in Family Code section 7630, subdivision (c). That section permits the child, the mother, the alleged father, or their personal representatives, among others, to bring an action to determine the existence of a parent-child relationship.
Section 6453 sets forth the means of establishing whether a person is a "natural parent" of another. One means includes the presumptions and procedures established by the Uniform Parentage Act (UPA), Family Code section 7600 et seq. *641 (§ 6453, subd. (a).) Another meansrelevant hereincludes establishing parentage through "any other provisions" of the UPA. This latter means includes a requirement of "[a] court order entered during the father's lifetime declaring paternity" if a party seeks to establish a natural parent and child relationship pursuant to Family Code section 7630, subdivision (c). (§ 6453, subd. (b)(1).)
We agree with the reasoning of Weir v. Ferreira, supra, 59 Cal.App.4th 1509, 1521, 70 Cal.Rptr.2d 33. The parentage issue here was finally and conclusively determined by the 1941 Ohio judgment. It satisfies section 6453, subdivision (b), because it was a court order "entered during [Draves's] lifetime declaring paternity." It was a judgment "determinative for all purposes" under Family Code section 7636.
It is true that all the procedural requirements of Family Code section 7630, including See's standing, may not have been met. Nevertheless, the requirements of section 6453, subdivision (b)(1) have been met without the need for additional proceedings under the UPA. (Weir v. Ferreira, supra, 59 Cal.App.4th 1509, 1521, 70 Cal.Rptr.2d 33.) The parties to the Ohio judgment and all those who are in privity with them or claim through them are estopped to deny the natural parent and child relationship. (Ibid.)

II.
See argues that sufficient evidence exists to support a finding that Draves "acknowledged" Griswold and "contributed to [his] support." (§ 6452, subds.(a), (b).) He relies upon Draves's confession of paternity in Huron County juvenile court in 1941 and his faithful payment of child support to the court for 18 years. See correctly points out that section 6452, subdivision (a), does not define "acknowledge" nor does it describe acts that might constitute "acknowledgment." (Lozano v. Scalier (1996) 51 Cal.App.4th 843, 848, 59 Cal.Rptr.2d 346 [§ 6452 refers to an "undescribed" acknowledgment].) He also correctly asserts that satisfaction of the requirements of section 6452 allows Griswold's half-siblings to share in the intestate estate pursuant to sections 6401, subdivision (c)(2)(B), and 6402, subdivision (c).
Section 6452 requires that the parent or a relative of the parent acknowledge a child born out of wedlock and contribute to the child's support. (Lozano v. Scalier, supra, 51 Cal.App.4th 843, 846, 59 Cal. Rptr.2d 346.) Although the statute does not define "acknowledge," the word must embrace more than contributing to the financial support of the child. Otherwise, subdivision (a) of the statute is surplusage and an interpretation that we must avoid. (Estate of Sanders (1992) 2 Cal.App.4th 462, 470, 3 Cal.Rptr.2d 536.) In interpreting a statute, we must give "significance to every word, phrase, sentence and part of an act in furtherance of the legislative purpose if possible." (Ibid.)
The word "acknowledge" has no technical meaning and means "to own or admit the knowledge of." (Blythe v. Ayres (1892) 96 Cal. 532, 577, 31 P. 915.) In Lozano v. Scalier, supra, 51 Cal.App.4th 843, 845, 848, 59 Cal.Rptr.2d 346, the father physically cared for the child some of the time, bought clothing and items for him, informed his family and friends that the child was his, and signed a financial form for medical care for the child's mother during her pregnancy. These acts sufficed to constitute acknowledgment within section 6452, permitting the father to bring an action for wrongful death of the child. (Id., at p. 848, 59 Cal.Rptr.2d 346.)
In Estate of Wilson (1958) 164 Cal. App.2d 385, 386-388, 330 P.2d 452, the decedent allowed the child into his home, admitted to his wife that he had fathered the child, introduced the child to family and friends, gave his consent to the child's marriage, and paid for her wedding. Wilson concluded that these acts amounted to public acknowledgment within the meaning of former Civil Code section 230, regarding *642 adoption of an illegitimate child. (Id., at p. 389, 330 P.2d 452.)
In Blythe v. Ayres, supra, 96 Cal. 532, 31 P. 915, the father never saw his illegitimate child because she resided in another country. Nevertheless, he admitted to family and friends that he fathered the child"he shouted it from the house-tops." (Id., at p. 577, 31 P. 915.) At the father's request, the child was named and baptized with his surname. (Ibid.) Blythe concluded that the father publicly acknowledged the illegitimate child for purposes of former Civil Code section 230. (Ibid.)
In a thoughtful statement of decision, the trial court here reasoned that the term "acknowledge" as used in judicial decisions involved some conduct to "establish a natural parent and child relationship." The trial court pointed out that "[t]here is no evidence that Mr. Draves received the decedent into his home, gave the decedent gifts or, of that matter, had any form of contact with the decedent whatever. In Mr. Draves' 1991 Will, he mentioned his daughter, Margaret Loera, and his son, Daniel Draves, but made no mention of the decedent. [¶] Likewise, there is no evidence that Mr. Draves declared to his family or friends that the decedent was his child. Mr. Draves evidently didn't even tell his son, Daniel, a daughter, Margaret, about the decedent. They did not learn about the decedent's existence until both Mr. Draves and the decedent had died. The single act by Mr. Draves of `confessing' to paternity in the 1941 Ohio Bastardy proceedings is not enough to constitute 'acknowledgement' under Probate Code section 6452."
It is true that decisions intimate that the term "acknowledge" encompasses conduct that establishes to some degree a relationship between parent and offspring. These decisions did not involve, however, a parent confessing to paternity in a legal action. Therefore the courts were required to examine the parent and child relationship to ascertain whether the parent acknowledged the child within the meaning of applicable statutes. (Estate of Wilson, supra, 164 Cal.App.2d 385, 386-388, 330 P.2d 452; Lozano v. Scalier, supra, 51 Cal.App.4th 843, 845, 848, 59 Cal.Rptr.2d 346.)
A review of the relationship is unnecessary where there exists an admission of paternity in a court of law. An admission is a voluntary act leading to a judgment of paternity. This is far different from a judicial determination of paternity after a contested hearing. (See Estate of Ginochio (1974) 43 Cal.App.3d 412, 416-417, 117 Cal.Rptr. 565 [judicial determination of paternity following a contested hearing does not establish acknowledgement within meaning of former Civ.Code § 230].) The acknowledgment here carries greater significance than telling a friend, or shouting paternity from the housetops. Moreover, it also satisfies the legislative intent to "discourage dubious paternity claims made after a father's death for the sole purpose of inheritance." (Estate of Sanders, supra, 2 Cal.App.4th 462, 474, 3 Cal.Rptr.2d 536.)
There was no father-son relationship here, but there was an acknowledgement made in court that created a legal relationship as well as an obligation of support. That is sufficient to satisfy section 6452 subdivisions (a) and (b).
The order is reversed. Respondent is to bear costs on appeal.
YEGAN, J., and ABBE, J.[*], concur.
NOTES
[1] All statutory references are to the Probate Code unless stated otherwise.
[*] Retired associate justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.